# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724**<br>**16-MD-2724** |
| | **HON. CYNTHIA M. RUFE** |
| **THIS DOCUMENT RELATES TO:** | |
| *State Attorneys General Litigation* | **Civ. No. 17-3768** |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corporation, et al.* | **Civ. No. 18-04137** |
| | **ORAL ARGUMENT REQUESTED** |

## DEFENDANT ASCEND LABORATORIES, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SHERMAN ACT CLAIMS AGAINST ASCEND FOR FAILURE TO STATE A CLAIM

FILED WITH REDACTIONS - PUBLIC VERSION

## TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................................1

II.   LEGAL STANDARD ............................................................................................2

III.   SUMMARY OF FACTUAL ALLEGATIONS REGARDING ASCEND ......................3

IV.   ASCEND'S ROLE SHOWS IT IS AN IMPROPER DEFENDANT .............................4

V.   PLAINTIFFS FAIL TO STATE A HORIZONTAL CONSPIRACY CLAIM.................5

    a.   Plaintiffs Have Not Sufficiently Alleged an Agreement with Heritage .................5

        i.   The Single Allegation of an Agreement Cannot Be Credited ...................6

        ii.   Plaintiffs' Pled No Conspiratorial Communications ................................7

        iii.   Heritage's Unilateral Conduct Is Not Sufficient for Liability...................8

    b.   A Price-Fixing or Market Allocation Agreement Is Implausible........................10

        i.   It Is Implausible that Ascend Conspired to Fix Prices or Allocate Market Share because Ascend Did Not Determine Either....................................................................................................10

        ii.   There Is an Alternative Explanation for Heritage's Price Raise...............10

    c.   Plaintiffs Failed to Sufficiently Allege Any "Plus Factor" .................................11

    d.   Plaintiffs Have Not Sufficiently Alleged an Antitrust Injury .............................12

VI.   ASCEND IS NOT LINKED TO ANY OVERARCHING CONSPIRACY ...................12

VII.   THE MARION PLAINTIFFS DO NOT PLEAD A CLAIM AGAINST ASCEND .......14

VIII.   CONCLUSION ....................................................................................................15

FILED WITH REDACTIONS - PUBLIC VERSION

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Bell Atl. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................... 2, 5, 6, 14

*Burtch v. Milberg Factors, Inc.,*
   662 F.3d 212 (3d Cir. 2011) .................................................................................. 5

*Butts v. Ramsey,*
   No. CIV.A. 13-3374, 2014 WL 736584 (E.D. Pa. Feb. 25, 2014) .......................... 6

*Copperweld Corp. v. Indep. Tube Corp.,*
   467 U.S. 752 (1984) ............................................................................................. 9

*Cosmetic Gallery, Inc. v. Schoeneman Corp.,*
   495 F.3d 46 (3d Cir. 2007) .................................................................................. 14

*Howard Hess Dental Lab. v. Dentsply Int'l,*
   602 F.3d 237 (3d Cir. 2010) .................................................................................. 8

*In re Auto. Parts Antitrust Litig.,*
   2016 WL 8200512 (E.D. Mich. Apr. 13, 2016) ..................................................... 12

*In re Choc. Confectionary Antitrust Litig.,*
   801 F.3d 383 (3d Cir. 2015) ............................................................................ 9, 10

*In re: McCormick & Co., Inc.,*
   217 F. Supp. 3d 124 (D.D.C. 2016) ..................................................................... 11

*In re Processed Egg Prod. Antitrust Litig.,*
   881 F.3d 262 (3d Cir. 2018) ................................................................................ 12

*In re Text Messaging Litig.,*
   630 F.3d 622 (7th Cir. 2010) ............................................................................... 15

*Jordan v. Staffing Plus, Inc.,*
   2018 WL 3046612 (E.D. Pa. June 20, 2018) .......................................................... 2

*Kelsey K. v. NFL Entm't., LLC,*
   254 F. Supp. 3d 1140 (N.D. Cal. 2017) ................................................................. 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................................................ 11

FILED WITH REDACTIONS - PUBLIC VERSION

*McClean v. Delaware County Hous. Auth.*,
   220 F. Supp. 3d 607 (E.D. Pa. 2016) ................................................................ 15

*McDermott v. Clondalkin Group, Inc.*,
   649 Fed. Appx. 263 (3d Cir. 2016) .................................................................... 7

*Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*,
   998 F.2d 1224 (3d Cir. 1993) ............................................................................ 8

*SigmaPharm, Inc. v. Mutual Pharm. Co., Inc.*,
   772 F. Supp. 2d 660 (E.D. Pa. 2011) ................................................................ 12

*State Farm Mut. Auto. Ins. Co. v. Ficchi*,
   2012 WL 1578247 (E.D. Pa. May 4, 2012) ...................................................... 7

*Superior Offshore Int'l. v. Bristow Grp*,
   738 F. Supp. 2d 505 (D. Del. 2010) .................................................................. 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) .......................................................................................... 2

*U.S. ex rel. Knisely v. Cintas Corp.*,
   298 F.R.D. 229 (E.D. Pa. 2014) ........................................................................ 7

*United States v. Chandler*,
   388 F.3d 796 (11th Cir. 2004) ........................................................................... 13

*United States v. Kelly*,
   892 F.2d 255 (3d Cir. 1989) .............................................................................. 13

*United States v. Kemp*,
   500 F.3d 257 (3d Cir. 2007) .............................................................................. 13

*Valspar Corp. v. E.I. Du Pont De Nemours*,
   873 F.3d 185 (3d Cir. 2017) .............................................................................. 9

*Wright v. Lehigh Valley Hosp. & Health Network*,
   2011 WL 2550361 (E.D. Pa. June 23, 2011) .................................................... 7

**RULES**

Fed. R. Civ. P. 21 ........................................................................................................ 5

Fed. R. Civ. P., Rules and Commentary R. 21 ........................................................... 5

Fed. R. Evid. 201 ........................................................................................................ 2

FILED WITH REDACTIONS - PUBLIC VERSION

**OTHER AUTHORITIES**

http://www.americanhealthpackaging.com/AboutUs.aspx ..........................................................1

5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004)...............................2, 4

iv

## I.     INTRODUCTION

Simply put, Ascend Laboratories LLC ("Ascend") should have never been brought into this lawsuit. In their alacrity to attempt to demonstrate rampant collusion involving the entire generic drug industry, the Plaintiff States (and Marion Diagnostic Center LLC and Marion HealthCare LLC, who have relied on the Plaintiff States' allegations)[1] (referred to herein as "Plaintiffs") have dragged Ascend—a small company with a small product—into this lengthy and costly litigation despite a critical fact entirely absent from the Amended Complaint: Ascend could not have fixed prices or allocated market share for this product, because Ascend did not market or sell it. In fact, the product, Nimodipine, was marketed and sold exclusively by an independent company, American Health Packaging ("AHP")[2] and not by Ascend at all.

The foundation of Plaintiffs' claims against Ascend rests on three clearly false assertions:

1. **Allegation:** "By May 1, 2015, Ascend had fully launched Nimodipine." (CAC ¶ 146.)

   **In fact:** Ascend <u>never</u> launched Nimodipine, and never sold it to Plaintiffs. Ascend was merely a contract manufacturer for AHP, an independent company, which exclusively marketed and sold it. Ascend did not market the product, nor did it have any connection to setting prices or allocating customers, which were entirely the decisions of AHP, a critical—indeed, dispositive—fact entirely omitted from the Amended Complaint.

2. **Allegation:** "Ascend's WAC price, per tablet, was even higher than Heritage's." (*Id*. ¶ 146.)

   **In fact:** Ascend did not have a WAC (Wholesale Acquisition Cost) price in 2015—or ever— because it did not sell Nimodipine to wholesalers.

3. **Allegation:** "Ascend began to gain market share throughout the second half of 2015." (*Id*. ¶ 147.)

   **In fact:** Ascend did not have *any* market share because it never marketed Nimodipine; it was merely a contract manufacturer and market share was entirely in AHP's purview.

---

[1] Because the Marion Plaintiffs only reference Ascend by citing allegations contained within the Plaintiff States' Amended Complaint, arguments regarding the insufficiency of the Plaintiff States' allegations equally apply to the Marion Plaintiffs' complaint. Therefore, this memorandum focuses on the Plaintiff States' allegations, specifically addressing issues unique to the Marion Plaintiffs' Amended complaint in Section VII.

[2] There are no allegations relating to American Health Packaging ("AHP"), which is an independent pharmaceutical marketer, and a subsidiary of AmerisourceBergen. *See* http://www.americanhealthpackaging.com/AboutUs.aspx.

FILED WITH REDACTIONS - PUBLIC VERSION

The crux of Plaintiffs' claims against Ascend—that Ascend fixed the price or allocated the market for Nimodipine—is not only untrue (and not sufficiently pled), it is **impossible**. In recognition of this fact, the Kroger Plaintiffs already dropped Ascend from their Amended Complaint.[3] Ascend should now be dismissed from the Plaintiff States' and Marion Plaintiffs' cases as well given the impossibility of their claims, and because they fail to sufficiently plead an agreement, a plausible conspiracy, or an antitrust injury.[4]

## II.   LEGAL STANDARD

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. v. Twombly*, 550 U.S. 544, 547 (2007). "Something more than a mere *possibility* of a claim must be alleged." *Jordan v. Staffing Plus, Inc.*, 2018 WL 3046612, at *1 (E.D. Pa. June 20, 2018) (Rufe, J.). "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed." 5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004). On the present Motion, the Court should consider certain documents that are matters of public record as judicially noticed as they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and/or the facts are integral to Plaintiffs' claims. *See* Fed. R. Evid. 201; *see also* Oct. 16, 2018 Motion to Dismiss Opinion at 37, No. 16-md-2724, Dkt. No. 721 ("MTD Op.") at 37 ("courts may consider documents *integral to or explicitly relied* upon in the complaint..."); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that "courts ordinarily examine...matters of which

---

[3] The Kroger Plaintiffs dropped Ascend as a defendant when they filed their Amended Complaint on December 21, 2018 (Dkt. No. 37), and Ascend has not been named as a defendant by *any* of the class plaintiffs currently part of the MDL, other than Marion (who adopted the Plaintiff States' allegations).

[4] Pursuant to Pretrial Order No. 61 (Dkt. No. 775) Ascend presently seeks to dismiss all of the pending federal, Sherman Act claims against it, including both claims brought by the Plaintiff States' Consolidated Amended Complaint, 17-cv-03768, Dkt. No. 14 ("CAC")) and the Marion Plaintiffs (Plaintiff Marion's Amended Complaint, 18-cv-04137, Dkt. No. 22 ("Marion Compl.")). Pursuant to Pretrial Order No. 61, Ascend adopts and incorporates all arguments made in the joint filing submitted by all Defendants challenging the sufficiency of Plaintiffs' overarching conspiracy claims, and Ascend reserves its right to later seek dismissal of all state law claims.

FILED WITH REDACTIONS - PUBLIC VERSION

[they] may take judicial notice" on a motion to dismiss).

## III.   SUMMARY OF FACTUAL ALLEGATIONS REGARDING ASCEND

The mere 22 paragraphs mentioning Ascend in Plaintiff States' 877-paragraph, 190-page Amended Complaint allege: On April 7, 2014, Ascend, a generic drug manufacturer, received FDA approval for Nimodipine, "a calcium channel blocking agent used to reduce problems caused by a bleeding blood vessel in the brain." (CAC ¶¶ 115, 135.) After, on April 8, 2014, Jason Malek, a VP at Heritage Pharmaceuticals ("Heritage"), told his company's employees to ███████ ████████████████████ (*Id.*) In an internal conference call on April 22, 2018, Heritage identified Nimodipine as one of 18 drugs it designated for a price increase. (*Id.* ¶ 136.) "Later in the day...Malek called ███, [████████████████], and the two spoke for nineteen (19) minutes." (*Id.* ¶ 138.) "***Upon information and belief***, during this conversation they agreed on a plan where Heritage would raise its prices, Ascend would enter the market at a high price to avoid erosion, and in exchange Heritage would walk away from certain accounts that Ascend had targeted so that Ascend could gain market share at favorable pricing." (*Id.*) (emphasis added). On May 9, 2014, Heritage internally discussed raising the price for Nimodipine and "identified specific customers that it would '████'" to Ascend. (*Id.* ¶ 139.) Malek "planned to offer Ascend" one-third market share "so that Ascend would not compete with Heritage on price." (*Id.* ¶ 136.) At the end of June, Heritage "implemented the price increase." (*Id.* ¶ 141.)

Malek reached out to ███ via email on June 6, October 29, November 4, November 18, and November 25, 2014 asking to ███████████. (*Id.* ¶¶ 140-144.) They had a ten-minute phone call on October 29, 2014, the contents of which is not alleged. (*Id.* ¶ 142.) There is no allegation that they spoke again after October 2014. In January 2015, Malek learned that Ascend had Nimodipine in its warehouse. (*Id.* ¶ 145.) "By May 1, 2015, Ascend had fully launched Nimodipine," allegedly with a higher WAC price than Heritage's, and "began to gain market share

3

throughout the second half of 2015." (*Id.* ¶¶ 146-147.)

The Marion Plaintiffs merely cite to allegations in the Plaintiff States' Complaint (Marion Compl. ¶ 51) summarized above, and then allege that McKesson Corporation, a distributor, acted as a co-conspirator with Ascend and the other defendants.[5]

## IV.   ASCEND'S ROLE SHOWS IT IS AN IMPROPER DEFENDANT

Plaintiffs' allegations—and their case against Ascend—are based on a false representation that Ascend marketed and sold Nimodipine. As noted above, the court may take judicial notice of matters of public record that confirm Ascend ***never sold Nimodipine to the wholesalers, retailers, or customers*** and Ascend ***had no control over the price at which Nimodipine was sold to the market***. Nor did Ascend make pricing or marketing decisions, which were entirely and exclusively the province of AHP to whom Ascend licensed and sold Nimodipine ***in bulk***. AHP was exclusively responsible for the packaging, distribution, price-setting, selection of customers, and marketing of Nimodipine, and it sold the drug under its own trade dress. (*See* W. Gordon Dobie's Declaration ¶ 3 (hereinafter "Dobie Decl."), Ex. 1, AHP Label at 10, 12).[6] Ascend acted as a contract manufacturer only, and did not sell Nimodipine under its own trade dress. In fact, IMS Data, the industry standard for pharmaceutical sales—which the Court can consider at this stage—lists ***AHP and not Ascend*** among companies that sold Nimodipine. (*See* Dobie Decl. ¶ 4, Ex. 2, IMS data.) Thus, Plaintiffs' allegations that Ascend "launched" Nimodipine or "gained market share" in 2015 are false.[7] (CAC ¶¶ 146, 147.) Ascend was never in the market—period—and its manifest actions to stay out of the market render highly "implausible" the allegation of an agreement to fix prices

---

[5] Plaintiffs only allege that Ascend was involved with the sale of **one** of the 15 drugs in the Amended Complaint— Nimodipine. Ascend does not have FDA approval for and has never manufactured any of the other 14 drugs.

[6] As noted above, we are asking that the Court take judicial notice of certain matters of public record.

[7] "The district court will not accept as true pleading allegations that are contradicted by facts that can be judicially noticed." 5C Wright & Miller, Federal Practice & Procedure § 1363 (3d ed. 2004).

FILED WITH REDACTIONS - PUBLIC VERSION

or restrain trade in a market which it never entered.[8]

Plaintiffs further base their price-fixing claims against Ascend on a high "wholesale acquisition cost" (a "WAC" price) Ascend allegedly used in May 2015. (CAC ¶ 146.) However, Ascend did **not even have a WAC price** because it was only selling Nimodipine to AHP, not to wholesalers. Publicly-available Medi-Span data—which can be judicially noticed—shows that Ascend did not have a WAC price in 2015, **or ever**. (*See* Dobie Decl. ¶ 5, Ex. 3, Medi-Span data.) This allegation, like the others attributing pricing to Ascend, is blatantly false.

In sum, Ascend is an improper defendant which should never have been dragged into this lawsuit. The claims against Ascend should be dismissed.[9]

## V.      PLAINTIFFS FAIL TO STATE A HORIZONTAL CONSPIRACY CLAIM

Putting aside the false allegations, Plaintiffs' claims against Ascend fail on their face: (1) they have not sufficiently alleged an agreement; (2) the alleged conspiracy is not plausible; (3) they failed to allege any "plus factor"; and (4) there is no antitrust injury. The Court should dismiss Plaintiffs' claims against Ascend to avoid burdening it with the "potentially enormous expense of discovery" when there is "no reasonably founded hope that the discovery process will reveal relevant evidence to support a Section 1 claim." *Twombly*, 550 U.S. at 559.

### a.      Plaintiffs Have Not Sufficiently Alleged an Agreement with Heritage

"Section 1 claims always require the existence of an agreement*." See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). Yet, Plaintiffs failed to assert factual allegations showing any meeting of the minds between Ascend and Heritage. *See* MTD Op. at 40 ("An agreement exists when there is a unity of purpose, a common design and understanding, a meeting

---

[8] In fact, Ascend had already contacted AHP to license Nimodipine the very day it received approval to market the product (April 7, 2014), which was **before** being contacted by Heritage to allegedly conspire.

[9] Alternatively, the Court should dismiss Ascend because it was misjoined and/or the relief Plaintiffs seek cannot be obtained from Ascend as it does not sell Nimodipine to the market. *See* Fed. R. Civ. P. 21; *see also* Fed. R. Civ. P., Rules and Commentary Rule 21 (Rule 21 may be used to "drop a defendant against whom no relief is sought.").

FILED WITH REDACTIONS - PUBLIC VERSION

of the minds, or a conscious commitment to a common scheme."). As detailed below, the Court cannot credit Plaintiffs' *only* direct allegation of a purported agreement because it was pled on "information and belief," despite the fact that Malek—one of the two alleged participants in the agreement—is a cooperating witness for the Plaintiff States. The remaining allegations against Ascend relating to a purported agreement are speculative, vague, and do not contain factual details, let alone any facts at all of Ascend's purported agreement—a far cry from what *Twombly* and its progeny require.

### i.    The Single Allegation of an Agreement Cannot Be Credited

The *only* allegation explicitly referring to any purported agreement between Heritage and Ascend is a bald conclusion that Malek and ▉ "agreed on a plan" during a mere *19-minute* phone call, which is pled only on "information and belief"—just like the allegation found insufficient by the Supreme Court in *Twombly*.[10] (*See* CAC ¶ 138.) Tellingly, Plaintiffs fail to include *any facts* of the contents of this purported call despite the fact that Malek—one of the two purported participants—"has cooperated and has agreed to continue to cooperate fully with the ongoing Attorneys General's Investigation." (*See* Dobie Decl. ¶ 6, Ex. 4, Malek Settlement at 2.)[11] Among other things, Malek agreed to produce documents and evidence, provide facts, and answer questions from the signatory-Plaintiff States. (*See id.* at 3.) Thus, the Plaintiff States would possess statements or records from Malek regarding what, *if anything*, was said to establish an agreement on the referenced call. *See, e.g., Kelsey K. v. NFL Entm't, LLC*, 254 F. Supp. 3d 1140, 1144 (N.D. Cal. 2017) ("one would expect at least some evidentiary facts to have been located and pled" when there is a "confidential witness" to provide the "details...regarding some actual conspiratorial

---

[10] In *Twombly*, the Supreme Court dismissed the claim where "Plaintiffs allege[d] upon information and belief that [alleged co-conspirators] have entered into a contract, combination or conspiracy." *Twombly*, 550 U.S. at 552.

[11] *See Butts v. Ramsey*, No. CIV.A. 13-3374, 2014 WL 736584, at *3 (E.D. Pa. Feb. 25, 2014) ("The Court may take judicial notice of [the] settlement agreement, which is a matter of public record").

FILED WITH REDACTIONS - PUBLIC VERSION

meeting, communication, or agreement"). Given that Plaintiffs did not include *any* such details (relying instead on the "information and belief" pleading crutch), this allegation is insufficient. *See Wright v. Lehigh Valley Hosp. & Health Network*, 2011 WL 2550361, at *3 (E.D. Pa. June 23, 2011) ("Reliance…on information and belief cannot transform legal conclusions into plausible factual allegations."); *U.S. ex rel. Knisely v. Cintas Corp.*, 298 F.R.D. 229, 241 (E.D. Pa. 2014) ("cursory allegations, made on information and belief alone, are unquestionably insufficient to open the door to broad and burdensome discovery").

Furthermore, "information and belief" pleading is only "permissible where it can be it can be shown that the requisite factual information is peculiarly within the defendant's knowledge or control." *See McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 267–68 (3d Cir. 2016) ("Several Courts of Appeals accept allegations 'on information and belief' when the facts at issue are peculiarly within the defendant's possession."); *see also State Farm Mut. Auto. Ins. Co. v. Ficchi*, 2012 WL 1578247, at *5 (E.D. Pa. May 4, 2012) ("Allegations based upon information and belief are permissible, but only if the pleading sets forth specific facts upon which the belief is reasonably based."). Given Malek's role as a cooperating witness, Plaintiffs' "information and belief" allegation about a purported agreement is improper and, thus, should not be credited.[12]

### ii. Plaintiffs' Pled No <u>Conspiratorial</u> Communications

Beyond the improper "information and belief" allegation, Plaintiffs merely allege brief, sporadic, innocuous messages between Heritage and Ascend, *e.g.*, to "██████," "██████," or find a "████████████," without even alleging that any agreement was made, discussed, or furthered in those messages. (*See* CAC ¶¶ 140, 142, 143.) The law is clear: such communications—even between competitors—do not plead a conspiratorial agreement. *See*

---

[12] The idea that Malek and Ascend's ██████ sketched out and reached a price-fixing and market-sharing agreement during a mere 19-minute phone call also belies common sense and undermines the plausibility of this allegation.

FILED WITH REDACTIONS - PUBLIC VERSION

*Superior Offshore Int'l v. Bristow Grp*, 738 F. Supp. 2d 505, 516 (D. Del. 2010) ("The Third Circuit has clearly ruled that communications between competitors do not permit an inference of an agreement to fix prices unless those communications rise to the level of an agreement, tacit or otherwise."); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224, 1235 and 1242 n. 15 (3d Cir. 1993) (social calls and telephone contacts among the defendants' representatives did not exclude the possibility that defendants acted independently).

Moreover, Plaintiffs' allegations do not, in aggregate, plead a conspiratorial agreement. Indeed, all they have pled are:

- an **internal** discussion **at Heritage** in April 2014 allegedly identifying Nimodipine as one of **18** drugs whose price **Heritage** wanted to raise (CAC ¶ 136);

- innocuous emails and messages sent via LinkedIn on a **handful** of occasions over the course of **seven months** (April to November 2014) (*id.* ¶¶ 137-143);

- brief phone calls in April and October 2014 (without any allegations detailing the specific contents even though Malek is cooperating with Plaintiffs) (*id.* ¶ 142);

- Heritage allegedly raising its price for Nimodipine in June 2014 after an **internal discussion** about increasing prices (*id.* ¶¶ 139, 141); and

- Ascend **allegedly** entering the market in 2015 with a WAC price higher than Heritage's and "gain[ing] market share throughout the second half of 2015" (*id.* ¶¶ 146-147).

Even taken as a whole, these allegations do not "plausibly suggest a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful agreement," as required. *Howard Hess Dental Lab. v. Dentsply Int'l*, 602 F.3d 237, 254 (3d Cir. 2010). This failure to sufficiently plead an agreement warrants dismissal, inasmuch as this Court has noted, "*Twombly* increased the burden antitrust plaintiffs must bear to satisfy Rule 8(a)." MTD Op. at 60.

### iii.    Heritage's Unilateral Conduct Is Not Sufficient for Liability

Plaintiffs' allegations depict, at most, Malek/Heritage taking ***unilateral*** action in advance of Ascend's entrance in the Nimodipine market—not ***concerted*** action, as required for a Section 1

FILED WITH REDACTIONS - PUBLIC VERSION

claim. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767-68 (1984). For example:

- All of the alleged communications between Malek and Ascend were initiated **by Malek**. (*See* CAC ¶¶ 135, 138, 140, 142, 143.) In fact, Plaintiffs even acknowledge that Ascend did not respond to many of Malek's messages, requiring Malek to follow up.

- **Heritage internally** decided to increase the price for Nimodipine **prior to** any purportedly conspiratorial communication with Ascend. (*Id.* ¶¶ 135-136.)

- The Malek call to Ascend, which, "on information and belief" allegedly included an agreement, occurred **after** Heritage announced this increase **internally**. (*Id.* ¶ 138.)

- Heritage purportedly raised its price for Nimodipine in June 2014, approximately **11 months** before Plaintiffs allege Ascend "launched" Nimodipine. (*Id.* ¶¶ 141, 146.)

Simply put, Ascend cannot be dragged into a costly and lengthy lawsuit based on the ***unilateral*** conduct of Heritage, ***even if*** Heritage had an anti-competitive motivation or made anticompetitive overtures (which has not even been pled). *See In re Choc. Confectionary Antitrust Litig.*, 801 F.3d 383, 396 (3d Cir. 2015) ("An important corollary to the agreement requirement is that § 1 liability cannot be predicated on a defendant's unilateral actions, no matter its anticompetitive motivations."); *Valspar Corp. v. E.I. Du Pont De Nemours*, 873 F.3d 185, 191 (3d Cir. 2017) ("a single firm's independent action, no matter how anticompetitive its aim, does not implicate § 1.").

The mere unilateral nature of Plaintiffs' allegations is also evidenced by their allegations about nothing more than potential offers by Heritage. Specifically, they allege that "Heritage ***planned*** to offer Ascend one-third (1/3) market share," (CAC ¶ 136), though they do not allege Malek, or anyone else at Heritage actually ***made this offer***, nor, crucially, do they allege any such offer was ***accepted*** by Ascend. Plaintiffs also do not allege that Heritage actually ***gave*** Ascend one-third market share, instead alleging that "Ascend ***began to gain*** market share." (*Id.* ¶ 147.) Such omissions demonstrate that Plaintiffs attempted to paint with a broad brush (even though

FILED WITH REDACTIONS - PUBLIC VERSION

Malek, the cooperating witness, would know details). This is not sufficient.[13]

### b. A Price-Fixing or Market Allocation Agreement Is Implausible

Plaintiffs' claims are also not plausible because (1) Ascend did not control Nimodipine's market price and (2) there is an equally plausible economic explanation.

### i. It Is Implausible that Ascend Conspired to Fix Prices or Allocate Market Share because Ascend Did Not Determine Either

It is wholly implausible that Ascend would have entered into an agreement to fix prices or allocate market share for a drug that it *never sold* to the market. As a mere contract manufacturer for Nimodipine, Ascend was not even in a position to allocate market share, nor to choose or influence the price at which Nimodipine was sold to customers. *See Choc. Confectionary*, 674 F. Supp. 2d at 604 n. 34 (finding the remote wholesaler-defendant's "pricing power ends when its products leave the warehouse" and it "exercised no control over the prices [] charged in the U.S. market"). Thus, Plaintiffs' theory, which is based on two things Ascend *did not control* (i.e., price and market share), cannot stand. *See, e.g.*, *id.* ("A plaintiff cannot hold a manufacturer liable for a price-fixing harm occurring after the product left the manufacturer's hands absent a showing that the manufacturer retained control over product pricing."). In other words, given the absence of any allegation of a conspiracy *between Ascend and AHP* (the entity who sold and set prices for Nimodipine), it is not plausible, or possible, for Ascend to have conspired as to Nimodipine.

### ii. There Is an Alternative Explanation for Heritage's Price Raise

Plaintiffs' claim is also not plausible because the Complaint simply alleges conduct which is equally consistent with permissible competition as with illegal conspiracy. To wit, Heritage's alleged decision to raise the price of Nimodipine in anticipation of Ascend entering the market would be rational economic conduct. Because Heritage was the *only* entity selling Nimodipine in

---

[13] Plaintiffs do not cite to specific prices. *See* MTD Op. at 13-18, 46-48 (citing pricing data from Group 1 complaints).

FILED WITH REDACTIONS - PUBLIC VERSION

2014 after Sun and Caraco had left the market (CAC ¶¶ 131, 133), the obvious explanation is that
Heritage raised its price to capture as much profit as possible during its final days as the sole seller
(i.e., before it would have competition from Ascend).[14] *See In re: McCormick & Co., Inc.*, 217 F.
Supp. 3d 124, 132 (D.D.C. 2016) ("Following *Twombly*, courts dismiss Section 1 complaints when
there is an independent business justification for the observed conduct and no basis for rejecting it
as the explanation for the conduct."). Because Heritage's "conduct [] is as consistent with
permissible competition as with illegal conspiracy [it] does not, without more, support even an
inference of conspiracy." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574.[15]

### c.    Plaintiffs Failed to Sufficiently Allege Any "Plus Factor"

Plaintiffs fail to allege any of the typical "plus factors" that would support circumstantial
allegations: motive, acting contrary to its interests, evidence of a traditional conspiracy. *See* MTD
Op. at 45 ("plus factors" "serve as proxies for direct evidence of an agreement.").

*First*, there is no factual allegation showing Ascend, as a contract manufacturer, was
motivated to enter into a price-fixing conspiracy for Nimodipine. Also, there are no allegations
that the Nimodipine market made collusion "more than usually attractive," unlike the allegations
the Court found persuasive regarding the market for each of the Group 1 drugs. *See* MTD at 56.[16]

*Second*, Plaintiffs have not alleged that Ascend acted contrary to its interests.[17] *Third*, as outlined
above, there are no factual allegations that there was a common plan between Ascend—who was

---

[14] Plaintiffs acknowledge that Heritage would have expected that the price would fall after Ascend's market entry.
(*See* CAC ¶ 5 ("As additional generic manufacturers market the product, the prices continue to fall slowly.").)

[15] Had Heritage and Ascend fixed the market, Heritage would not have needed to suddenly and hurriedly raise its
prices **before** Ascend's entry. Heritage's conduct undercuts—rather than supports—Plaintiffs' claim.

[16] In its ruling on the Group 1 motions to dismiss, the Court noted that, "With respect to the first plus factor—motive,
Group 1 Plaintiffs' allegations describe the market for each of the Group 1 drugs 'as one that is highly concentrated,
contains high barriers to entry, has inelastic demand, lacks reasonable substitutes, and is based on a standardized
product....'" and "outline a regulatory regime that could reduce Group 1 Defendants' profits by driving down generic
drug prices over time and which would give them a common motive to set drug prices." MTD at 56. The Plaintiff
States' do not make any such allegations regarding the Nimodipine market.

[17] For example, the Plaintiff States did not allege that the "price increases were not correlated with similar changes in
demand or manufacturing." *Contra* MTD Op. at 57.

FILED WITH REDACTIONS - PUBLIC VERSION

not manufacturing Nimodipine when a deal was purportedly struck in 2014—and Heritage.

### d. Plaintiffs Have Not Sufficiently Alleged an Antitrust Injury

Plaintiffs also have not pled an antitrust injury from Ascend's purportedly illegal conduct, as required. Rather, Plaintiffs merely allege in conclusory fashion that Nimodipine was purchased or reimbursed "at supra-competitive prices" (CAC ¶ 482) or that there were "Market Effects" (*id.* ¶¶ 464-467), without supporting factual allegations, let alone for Nimodipine specifically. *See In re Processed Egg Prod. Antitrust Litig.*, 881 F.3d 262, 275 (3d Cir. 2018) (noting the antitrust laws "were intended to provide redress" for paying higher prices).

There also is no causation. Because Ascend did ***not sell*** Nimodipine to customers (***including the Marion Plaintiffs***) and did ***not set the price*** paid by the Plaintiffs or any customers for Nimodipine (as a mere contract manufacturer), it was impossible for Ascend to have caused antitrust injury. *See SigmaPharm, Inc. v. Mut. Pharm. Co., Inc.*, 772 F. Supp. 2d 660, 673-74 (E.D. Pa. 2011) (Rufe, J.) (dismissing claim for failure to plead an antitrust injury).

## VI.   ASCEND IS NOT LINKED TO ANY OVERARCHING CONSPIRACY

Even if the Court were to conclude that plaintiffs sufficiently pled an Ascend/Heritage conspiracy on Nimodipine, Plaintiffs have not sufficiently alleged that such conduct was part of a larger, overarching conspiracy. *See In re Auto. Parts Antitrust Litig.,* 2016 WL 8200512, at *4 (E.D. Mich. Apr. 13, 2016) (the allegations were "sufficient to plead the existence of a common purpose among subsets of Defendants as to particular component parts, but are not sufficient to plead one, global auto parts conspiracy.") Indeed, Plaintiffs failed to allege any conduct ***by Ascend*** relating to any overarching conspiracy. Instead, Ascend is merely lumped in to references to "***all*** Defendants." (*See, e.g.,* CAC ¶¶ 91-93, 98, 107-109, 148.). This is grossly insufficient under *Twombly. See* MTD Op. at 41 ("The Court properly looks for more than mere repetitive generic reference to 'Defendants' tacked on to a conclusory verb form to connect an individual defendant

12

to an actual agreement in an antitrust conspiracy.")

Nor do Plaintiffs assert specific allegations regarding Ascend to meet the three prongs of the inquiry distinguishing "a single conspiracy" from "separate and unrelated conspiracies":

> (1) whether there was a common goal among the conspirators; (2) whether the agreement contemplated bringing to pass a continuous result that will not continue without the continuous cooperation of the conspirators; and (3) the extent to which the participants overlap in the various dealings. *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989).

***Prong One – Common Goal:*** While Plaintiffs have argued in this litigation that the "common goal" was that the "competitors can reach out to each other and divide the market amongst each other to avoid price erosion through competition" (Dkt. 552 at 18), there are no allegations describing ***Ascend's*** other products, no allegations about whether ***Ascend*** competes with all Defendants, and no allegations that ***Ascend*** participates in the same markets.

***Prong Two – Continuous Cooperation of Defendants:*** There are no allegations that Ascend cooperated—let alone had "continuous cooperation" with all the other Defendants. Plaintiffs do not allege that Ascend had ***any knowledge*** that other Defendants were reaching pricing or market allocation agreements or that any other Defendant ***had knowledge*** of Ascend's purported agreement with Heritage. Plaintiffs have not pled that Ascend's conduct was "required to insure the success of the venture" nor that other Defendants' conduct benefitted Ascend. *United States v. Chandler*, 388 F.3d 796, 811–12 (11th Cir. 2004) ("The actions of one spoke did not facilitate the endeavors of other coconspirators or the venture as a whole."); *United States v. Kemp*, 500 F.3d 257, 289 (3d Cir. 2007) ("In evaluating interdependence, we consider how helpful one individual's contribution is to another's goals.").

***Prong Three – Overlapping Dealings:*** Plaintiffs have not alleged ***any*** agreement or connection that Ascend had with Defendants (other than, purportedly, with Heritage). Thus, Plaintiffs have not even alleged that Ascend had the ***opportunity*** to conspire with the Defendants

13

(let alone that it did so).[18] Indeed, except for the existence of *three* text messages and/or phone calls between some Ascend employee and some Teva employee in August *2013* (that plaintiffs fail to allege are the least bit nefarious) (CAC ¶ 95), Plaintiffs do not allege a *single instance of any communication* between Defendants and Ascend (even though Plaintiffs claim that *phone communication* was the primary mode through which Defendants conspired (CAC ¶ 15)).

Plaintiffs excluded Ascend from the list of Defendants who purportedly attended conspiratorial dinners (CAC ¶ 83) and did not specifically allege Ascend attended any trade shows or conferences. At most, Plaintiffs allege the nonsensical fact that Ascend's headquarters, like much of the drug industry, is located in New Jersey, in geographical proximity to other Defendants. (CAC ¶¶ 82, 91.) This is woefully deficient. *See* MTD Op. at 61 (concluding plaintiffs' allegations against Teligent were not sufficient in part because they did not allege Teligent was a member of the Generic Pharmaceutical Association, Teligent was not alleged to have "board representation on any relevant trade association," and no allegations "any Teligent representative attended any industry-sponsored social gatherings"); *contra id.* at 28 (finding sufficient allegations "regarding Defendants' attendance at trade association meetings taking place over a number of years, identifying meeting dates and names and job titles of employees who attended on Defendants' behalf"); *Twombly, supra* (trade show meetings insufficient).

## VII.   THE MARION PLAINTIFFS DO NOT PLEAD A CLAIM AGAINST ASCEND

The Marion Plaintiffs mention Ascend a mere *four times* in their Amended Complaint: Ascend's name appears in two text message charts and they reference (though do not explicitly incorporate) allegations in the Plaintiff States' Complaint. (*See* Marion Compl. ¶¶ 51-53.) Thus, the Plaintiff States' failure to state a sufficient Sherman Act claim against Ascend (as outlined

---

[18] Of course, "proof of opportunity alone is insufficient to sustain an inference of conspiracy." *Cosmetic Gallery, Inc. v. Schoeneman Corp.*, 495 F.3d 46, 53 (3d Cir. 2007).

FILED WITH REDACTIONS - PUBLIC VERSION

above) warrants dismissal of the Marion Plaintiffs' claims against Ascend as well. Moreover, given Ascend's role as a contract manufacturer for Nimodipine (as discussed above), it **never sold Nimodipine to the Marion Plaintiffs** (and thus, did not set the price for or possibly injure the Marion Plaintiffs). Furthermore, to the extent that the Marion Plaintiffs assert a conspiracy involving McKesson Corporation, such claims must be dismissed as to Ascend as they offer **no** allegation tying any conduct by McKesson to Ascend. Therefore, all of the Marion Plaintiffs' federal claims against Ascend should be dismissed, with prejudice.

## VIII.   CONCLUSION

The Plaintiff States' Complaint and the Marion Plaintiffs' Complaint fall far short of pleading a Sherman Act claim against Ascend—a small company facing allegations relating to only *one drug* in a sprawling litigation involving more than 100 parties and 30 different drugs. Perhaps most troubling, Plaintiffs fail to sufficiently plead an agreement between Ascend and Heritage, let alone a *plausible* conspiracy, particularly given Ascend's role as a contract manufacturer. Under such circumstances, *Twombly* requires dismissal to avoid "allow[ing] a complex case of extremely dubious merit to proceed…immers[ing] the parties in the discovery swamp…and by doing so creat[ing] irrevocable as well as unjustifiable harm to the defendant." *In re Text Messaging Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010). Consistent with the Kroger Plaintiffs' decision to drop Ascend, Ascend respectfully requests that the Court dismiss all the federal antitrust claims against it in their entirety, with prejudice.[19]

---

[19] To the extent the Court dismisses any claims against Ascend, they should be dismissed **with prejudice** because any additional amendment would be futile given the fact that Plaintiffs moved to amend their complaint after 10 months, significant investigation, and with the benefit of Malek as a cooperating witness, yet they come far from stating a plausible claim. *See, e.g., McClean v. Delaware County Hous. Auth.,* 220 F. Supp. 3d 607, 614 (E.D. Pa. 2016) (Rufe, J.) (dismissing the complaint, which had already been amended, with prejudice because amendment would be futile).

FILED WITH REDACTIONS - PUBLIC VERSION

Dated: February 21, 2019                    Respectfully submitted,

                                            /s/ W. Gordon Dobie
                                            W. Gordon Dobie
                                            WINSTON & STRAWN LLP
                                            35 W. Wacker Dr.
                                            Chicago, IL 60601
                                            Tel: (312) 558-5600
                                            Fax: (312) 558-5700
                                            WDobie@winston.com

                                            /s/ Irving Wiesen
                                            Irving Wiesen
                                            LAW OFFICES OF IRVING L. WIESEN,
                                            P.C.
                                            420 Lexington Avenue - Suite 2400
                                            New York, NY 10170
                                            Tel: (212) 381-8774
                                            Fax: (646) 536-3185
                                            iwiesen@wiesenlaw.com

                                            *Counsel for Defendant Ascend Laboratories,
                                            LLC*

FILED WITH REDACTIONS - PUBLIC VERSION