**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: GENERIC PHARMACEUTICALS PRICING ANTITRUST LITIGATION** | **MDL 2724** |
| | **Civ. No. 2:18-cv-04137-CMR** |
| **THIS DOCUMENT RELATES TO:** | **JURY TRIAL DEMANDED** |
| *Marion Diagnostic Center, LLC, et al. v. McKesson Corporation, et al.* | **THIRD AMENDED COMPLAINT CLASS ACTION** |

## TABLE OF CONTENTS

AN OVERARCHING CONSPIRACY EXTENDS ACROSS THE GENERIC
DRUG INDUSTRY ...................................................................................................1

JURISDICTION AND VENUE ...............................................................................2

PARTIES ...................................................................................................................2

    Plaintiffs ..............................................................................................................2

    Defendant Distributor ........................................................................................3

    Defendant Manufacturers...................................................................................4

THE DEFENDANTS' CONSPIRACY ...................................................................14

CLASS ACTION ALLEGATIONS .......................................................................48

    Class of Direct Purchasers From Conspirator McKesson..............................48

    Rule 23(a) Prerequisites ..................................................................................49

    Rule 23(b)(3) Prerequisites .............................................................................50

    Rule 23(b)(2) Prerequisites .............................................................................50

ANTITRUST INJURY ...........................................................................................50

STANDING .............................................................................................................51

COUNT I – Restraint of Trade (Section 1 of the Sherman Act) ...................................51

SUPPLEMENTAL JURISDICTION .....................................................................52

    Indirect Purchaser Healthcare Class ...............................................................52

    Rule 23(a) Prerequisites ..................................................................................52

    Rule 23(b)(3) Prerequisites .............................................................................53

COUNT II – Alabama ...........................................................................................54

COUNT III – Arizona ...........................................................................................54

COUNT IV – California .........................................................................................55

COUNT V – District of Columbia..........................................................................56

COUNT VI – Hawaii ........................................................................................................57

COUNT VII – Illinois .....................................................................................................57

COUNT VIII – Iowa .......................................................................................................58

COUNT IX – Kansas ......................................................................................................59

COUNT X – Maine .........................................................................................................60

COUNT XI – Michigan ...................................................................................................60

COUNT XII – Minnesota ................................................................................................61

COUNT XIII – Mississippi .............................................................................................62

COUNT XIV – Nebraska .................................................................................................63

COUNT XV – Nevada .....................................................................................................63

COUNT XVI – New Hampshire ......................................................................................64

COUNT XVII – New Mexico ..........................................................................................65

COUNT XVIII – New York .............................................................................................66

COUNT XIX – North Carolina .......................................................................................66

COUNT XX – North Dakota ...........................................................................................67

COUNT XXI – Oregon ....................................................................................................68

COUNT XXII – Rhode Island .........................................................................................69

COUNT XXIII – South Dakota .......................................................................................69

COUNT XXIV – Tennessee .............................................................................................70

COUNT XXV – Utah ......................................................................................................71

COUNT XXVI – Vermont ...............................................................................................72

COUNT XXVII – West Virginia .....................................................................................72

COUNT XXVIII – Wisconsin .........................................................................................73

COUNT XXIX – Connecticut ..........................................................................................74

COUNT XXX – Maryland ...............................................................................................75

PRAYER FOR RELIEF ..........................................................................................................75

JURY DEMAND ...................................................................................................................75

1.     Plaintiffs Marion Diagnostic Center, LLC and Marion Healthcare, LLC on behalf of themselves and all others similarly situated, bring this action on behalf of healthcare providers who purchased generic drugs from an overarching, industry-wide conspiracy comprised of Defendant manufacturers of generic drugs, and in some cases the distributors and wholesalers of those drugs.

2.     In the pharmaceutical industry the entry of generic versions of branded drugs usually results in aggressive price competition, which in turn results in lower prices for end users. Defendants conspired to thwart this process, and to deny consumers the benefits of competition. Defendants did so by entering into an unlawful overarching horizontal and vertical conspiracy to fix prices and to allocate sales among themselves for generic drugs across the industry. Their conduct is a *per se* violation of Section One of the Sherman Act, 15 U.S.C § 1, and is a violation of several state laws. Plaintiffs seek damages and injunctive relief.

### AN OVERARCHING CONSPIRACY EXTENDS ACROSS THE GENERIC DRUG INDUSTRY

3.     The Defendant drug manufacturers have engaged in a conspiracy to raise generic drug prices through agreements to limit the extent to which they compete against each other, as described more fully in Paragraphs 120–161 of the IRP/Hospital Complaint (Doc. No. 71, Case No. 19-cv-6044 (E.D. Pa.)), which are incorporated here by reference.

4.     Defendant McKesson, a major distributor of generic drugs, joined in the manufacturers' conspiracy and worked to promote it, as described more fully in Paragraphs 282–343 of the IRP/Hospital Complaint, which are incorporated here by reference.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this damage and injunctive action under 28 U.S.C. §§ 1331 and 1337; Section 1 of the Sherman Act, 15 U.S.C. § 1; Section 4 of the Clayton Act, 15 U.S.C. § 15; and Section 16 of the Clayton Act, 15 U.S.C. § 26.

6.      Venue is proper in this District under 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d), because defendants transact business throughout the United States, including in this District, because defendants reside within this District, and because a portion of the affected interstate trade and commerce discussed below was carried out in this District. Defendants have sold and distributed generic pharmaceuticals in interstate commerce in the United States and this District. Defendants' conduct had a direct, substantial, and reasonably foreseeable effect on interstate commerce in the United States, including in this District.

7.      This Court has personal jurisdiction over each defendant because, *inter alia*, each defendant: (a) transacts business throughout the United States, including in this District; (b) participates in the selling and distribution of generic drugs throughout the United States, including in this District; (c) has maintained substantial contacts within the United States, including in this District; and/or (d) has engaged in an unlawful conspiracy to inflate the prices for generic drugs generally, injuring persons doing business throughout the United States, including in this District.

8.      This Court has supplemental jurisdiction over state law damage claims alleged in the alternative in Counts II-XXVIII by virtue of its original jurisdiction over federal injunctive claims pursuant to 28 U.S.C. § 1367(a).

## PARTIES

### Plaintiffs

9.      Plaintiff Marion Diagnostic Center LLC is a limited liability company formed under the laws of the State of Illinois, with its principal place of business in Marion, Illinois.

Marion Diagnostic operates a multidisciplinary healthcare facility including an outpatient surgery practice, a diagnostic center, and a walk-in clinic.

10.     Plaintiff Marion HealthCare, LLC is a limited liability company formed under the laws of the State of Illinois, with its principal place of business in Marion, Illinois. Marion HealthCare, which is owned and operated by area physicians, operates a multi-specialty surgery center in Marion.

11.     This complaint refers to Plaintiffs collectively as "Marion." During the time relevant to this complaint, Marion has directly purchased generic drugs from the conspiracy through McKesson Medical-Surgical, Inc., including but not limited to Acetazolamide, Atenolol, Atropine Sulfate, Ciproflaxin, Flurbiprofen, Hydrocodone Acetaminophen, Hydrocortisone Acetate, Ketorolac, Labetalol, Lidocaine, Metronidazole, Naproxen, Nystatin, Oxybutynin, Pilocarpine HCl, Prednosolone Acetate, Promethazine HCl, Ranitidine, Silver Sulfadiazene, Timolol Maleate, and Tobramycin.

**Defendant Distributor**

12.     Defendant McKesson Corporation is a corporation formed under the laws of Delaware, with its principal place of business in San Francisco, California. McKesson (including its subsidiary McKesson Medical-Surgical, Inc.) is one of the four largest distributors of generic drugs in the United States.

13.     Defendant McKesson Medical-Surgical Inc. is a corporation formed under the laws of Virginia, with its principal place of business in Richmond, Virginia. It is a controlled subsidiary of McKesson Corporation (collectively "McKesson"). At all times relevant to this Complaint, McKesson marketed and sold generic pharmaceuticals in this District and throughout the United States.

**Defendant Manufacturers**

14.     Defendant Actavis Holdco US, Inc. ("Actavis Holdco"), is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.  In August 2016, Teva Pharmaceuticals USA, Inc. acquired the Actavis generics business of Allergan plc, including Actavis, Inc.  Upon the acquisition, Actavis, Inc. – the acquired Allergan plc generics operating company (formerly known as Watson Pharmaceuticals) – was renamed Allergan Finance, LLC, which in turn assigned all of the assets and liabilities of the former Allergan plc generics business to the newly formed Actavis Holdco, including subsidiaries Actavis Pharma, Inc. and Actavis Elizabeth LLC (a research and development and manufacturing entity for Actavis's generic operations), among others.  Actavis Holdco is a wholly owned subsidiary of Teva Pharmaceuticals USA, Inc., which is a Delaware corporation with its principal place of business in North Wales, Pennsylvania.

15.     Defendant Actavis Pharma, Inc. is a Delaware corporation with its principal place of business in Parsippany, New Jersey. It is a wholly owned subsidiary of Actavis Holdco and is a principal operating company in the U.S. for generic products acquired from Allergan plc.  It manufactures, markets, and/or distributes generic pharmaceuticals.

16.     Actavis Elizabeth LLC ("Actavis Elizabeth") is a Delaware company with its principal place of business in Elizabeth, New Jersey.  It is a wholly owned subsidiary of Actavis Holdco and is a research, development, and manufacturing entity for Actavis generic operations.

17.     Unless addressed individually, Actavis Holdco, Actavis Pharma, and Actavis Elizabeth are collectively referred to herein as "Actavis."  At all times relevant to this Complaint, Actavis marketed and sold generic pharmaceuticals in this District and throughout the United States.

4

18.     Defendant Akorn, Inc. is a Louisiana company with its principal place of business in Lake Forest, Illinois.  It is the parent company of Hi-Tech Pharmacal Co., Inc. and Akorn Sales, Inc.

19.     Defendant Akorn Sales, Inc. is a Delaware corporation. It is a wholly-owned subsidiary of Akorn Inc. It is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania.

20.     Defendant Hi-Tech Pharmacal Co., Inc. ("Hi-Tech") is a Delaware corporation with its principal place of business in Amityville, New York. It is a wholly-owned subsidiary of Akorn, Inc. Akorn Inc. acquired and integrated Hi-Tech into its operations in April 2014.

21.     Defendant Versapharm, Inc. ("Versapharm") is a Georgia corporation with its principal place of business in Marietta, GA. It is a wholly-owned subsidiary of Akorn, Inc. Versapharm was acquired by Akorn, Inc. in August 2014.

22.     Unless addressed individually, Akorn Inc., Akorn Sales, Inc., Hi-Tech and Versapharm are collectively referred to herein as "Akorn." At all times relevant to this Complaint, Akorn marketed and sold generic pharmaceuticals in this District and throughout the United States.

23.     Defendant Alvogen Inc. ("Alvogen") is a Delaware corporation with its principal place of business in Pine Brook, New Jersey. It is a privately held company that was founded in 2009 by a former CEO of Defendant Actavis. At all times relevant to this Complaint, Alvogen marketed and sold generic pharmaceuticals in this District and throughout the United States.

24.     Defendant Amneal Pharmaceuticals, Inc. ("Amneal Inc.") is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in Bridgewater, New Jersey.  It is the parent company of Defendant Amneal Pharmaceuticals, LLC.

25.     Defendant Amneal Pharmaceuticals, LLC ("Amneal LLC") is a Delaware limited liability company with its principal place of business in Bridgewater, New Jersey.

26.     Unless addressed individually, Amneal Inc. and Amneal LLC are collectively referred to herein as "Amneal."  At all times relevant to this Complaint, Amneal marketed and sold generic pharmaceuticals in this District and throughout the United States.

27.     Defendant Apotex Corp. ("Apotex") is a corporation organized and existing under the laws of the State of Delaware. Its principal place of business is 2400 North Commerce Parkway, Weston, Florida.  At all times relevant to this Complaint, Apotex has marketed and sold generic pharmaceuticals in this District and throughout the United States.

28.     Defendant Ascend Laboratories, LLC ("Ascend") is a corporation formed under the laws of the State of New Jersey, with a principal place of business in Parsippany, New Jersey. At all times relevant to this Complaint, Ascend marketed and sold generic pharmaceuticals in this District and throughout the United States.

29.     Defendant Aurobindo Pharma U.S.A., Inc. ("Aurobindo") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Dayton, New Jersey.  At all times relevant to this Complaint, Aurobindo marketed and sold generic pharmaceuticals in this District and throughout the United States.

30.     Defendant Bausch Health Americas, Inc. (formerly known as Valeant Pharmaceuticals International, Inc.) is a Delaware corporation with its U.S. headquarters located in Bridgewater, New Jersey.

31.     Bausch Health US, LLC (formerly known as Valeant Pharmaceuticals North America LLC) is a Delaware limited liability company with its principal place of business in

Bridgewater, New Jersey.  Bausch Health US, LLC is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania.

32.     Defendant Oceanside Pharmaceuticals, Inc. ("Oceanside") is a wholly-owned subsidiary of Bausch Health Americas, Inc. It is a Delaware corporation with its principal place of business in Bridgewater, New Jersey.

33.     Unless addressed individually, Bausch Health Americas, Inc.; Bausch Health US, LLC; and Oceanside Pharmaceuticals, Inc. are collectively referred to herein as "Valeant."  At all times relevant to this Complaint, Valeant marketed and sold generic pharmaceuticals in this District and throughout the United States.

34.     Defendant Breckenridge Pharmaceutical, Inc. ("Breckenridge") is a Florida corporation with its principal place of business at 15 Massirio Drive, Berlin, Connecticut.  At all times relevant to this Complaint, Breckenridge has marketed and sold generic pharmaceuticals in this District and throughout the United States.

35.     Defendant Camber Pharmaceuticals, Inc. ("Camber") is a Delaware corporation with its principal place of business in Piscataway, New Jersey. Camber is a wholly-owned subsidiary of Hetero Drugs, an Indian pharmaceutical company. At all times relevant to this Complaint, Camber marketed and sold generic pharmaceuticals in this District and throughout the United States.

36.     Defendant Citron Pharma, LLC ("Citron") is a New Jersey corporation with its principal place of business in East Brunswick, New Jersey. At all times relevant to this Complaint, Citron marketed and sold generic pharmaceuticals in this District and throughout the United States.

37.     Defendant Dr. Reddy's Laboratories, Inc. ("Dr. Reddy's") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business

at 107 College Road East, Princeton, New Jersey. At all times relevant to this Complaint, Dr. Reddy's has marketed and sold generic pharmaceuticals in this District and throughout the United States.

38.     Defendant G&W Laboratories, Inc. ("G&W") is a New Jersey corporation with its principal place of business in South Plainfield, New Jersey. At all times relevant to this Complaint, G&W marketed and sold generic pharmaceuticals in this District and throughout the United States.

39.     Defendant Glenmark Pharmaceuticals Inc., USA ("Glenmark") is a corporation organized and existing under the laws of the State of Delaware with a principal place of business in Mahwah, New Jersey. At all times relevant to this Complaint, Glenmark marketed and sold generic pharmaceuticals in this District and throughout the United States.

40.     Defendant Greenstone LLC ("Greenstone") is a limited liability company located in North Peapack, New Jersey. Greenstone is a wholly owned subsidiary of Defendant Pfizer Inc. ("Pfizer"), a global pharmaceutical company headquartered in New York, New York, and has at all relevant times operated as the generic drug division of Pfizer. Greenstone operates out of Pfizer's Peapack, New Jersey campus, and a majority of Greenstone's employees are also employees of Pfizer's Essential Health Division, including Greenstone's President. Greenstone employees also use Pfizer for financial analysis, human resources, and employee benefit purposes, making the two companies essentially indistinguishable.

41.     Defendant Pfizer is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New York. Pfizer is a global biopharmaceutical company and is the corporate parent of Defendant Greenstone.

42.     Unless addressed individually, Greenstone and Pfizer are collectively referred to herein as "Greenstone." At all times relevant to this Complaint, Greenstone – under the direction

8

and control of Pfizer – marketed and sold generic pharmaceuticals in this District and throughout the United States.

43.    Defendant Heritage Pharmaceuticals, Inc. ("Heritage") is a Delaware corporation with its principal place of business in Eatontown, New Jersey. It is the exclusive United States commercial operation for Emcure Pharmaceuticals Private Ltd., an Indian company headquartered in Pune, in the state of Maharashtra, India. At all times relevant to this Complaint, Heritage marketed and sold generic pharmaceuticals in this District and throughout the United States.

44.    Defendant Kavod Pharmaceuticals LLC, formerly known as Rising Pharmaceuticals, LLC and Rising Pharmaceuticals, Inc. (collectively referred to as "Rising"), is a Delaware corporation with, upon information and belief, its principal place of business in Saddle Brook, New Jersey.

45.    On December 3, 2019, Rising admitted to fixing prices and allocating customers for Benazepril-HCTZ. It has been charged with one count of a felony conspiracy in restraint of trade, and agreed to a deferred prosecution agreement with the Department of Justice. Rising sold and conspired regarding drugs other than Benazepril-HCTZ and marketed and sold generic pharmaceuticals in this District and throughout the United States during the times relevant to this Complaint.

46.    On March 2, 2020, in a deferred prosecution agreement following criminal charges filed by the Department of Justice, Defendant Sandoz, Inc. admitted that it had conspired with Rising "to suppress and eliminate competition by agreeing to allocate customers for, and stabilize, maintain, and fix prices of, Benazepril-HCTZ sold in the United States, from at least as early as April 2014 and continuing until at least September 2015."

47.     Defendant Lannett Company, Inc. ("Lannett") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania.   At all times relevant to this Complaint, Lannett marketed and sold generic pharmaceuticals in this District and throughout the United States.

48.     Defendant Lupin Pharmaceuticals, Inc. ("Lupin") is a Delaware corporation with its principal place of business in Baltimore, Maryland.   Lupin is a wholly owned subsidiary of Lupin Ltd., an Indian company with its principal place of business in Mumbai, India.   At all times relevant to this Complaint, Lupin marketed and sold generic pharmaceuticals in this District and throughout the United States.

49.     Defendant Mallinckrodt Inc. is a Delaware corporation with its principal place of business in Webster Groves, Missouri.   As a result of a tax inversion acquisition, as of 2013 it is a wholly owned subsidiary of Mallinckrodt plc, which is based in the United Kingdom. Mallinckrodt Inc. is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania.

50.     Defendant Mallinckrodt plc is an Irish public limited company with its principal place of business in Staines-Upon-Thames, Surrey, United Kingdom.   Mallinckrodt plc was incorporated in January 2013 for the purpose of holding the pharmaceuticals business of Covidien plc, which was fully transferred to Mallinckrodt plc in June of that year.   Mallinckrodt plc also operates under the registered business name Mallinckrodt Pharmaceuticals, with its U.S. headquarters in Hazelwood, Missouri.

51.     Defendant Mallinckrodt LLC is a Delaware limited liability corporation headquartered in Hazelwood, Missouri.

52.     Unless addressed individually, Mallinckrodt Inc., Mallinckrodt plc, and Mallinckrodt LLC are collectively referred to herein as "Mallinckrodt."  At all times relevant to this Complaint, Mallinckrodt marketed and sold generic pharmaceuticals in this District and throughout the United States.

53.     Defendant Mayne Pharma Inc. is a Delaware corporation that has its principal place of business in Raleigh, North Carolina. Mayne Pharma Inc. is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania. In 2012, Mayne Pharma Inc. acquired Metrics, Inc. and its division Midlothian Laboratories, and has also operated under the name Midlothian since that time. In 2013, Mayne Pharma Inc. acquired Libertas Pharma. Unless addressed individually, Metrics, Inc. Midlothian Laboratories, Libertas Pharma and Mayne Pharma Inc. are collectively referred to herein as "Mayne." At all times relevant to this Complaint, Mayne marketed and sold generic pharmaceuticals in this District and throughout the United States.

54.     Defendant Mylan Inc. is a Pennsylvania corporation with its principal place of business in Canonsburg, Pennsylvania.

55.     Defendant Mylan Pharmaceuticals Inc. ("Mylan Pharma") is a West Virginia corporation with its principal place of business in Morgantown, West Virginia.  It is a subsidiary of Mylan Inc.  Mylan Pharma is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania.

56.     Unless addressed individually, Mylan Inc. and Mylan Pharma are collectively referred to herein as "Mylan."  At all times relevant to this Complaint, Mylan marketed and sold generic pharmaceuticals in this District and throughout the United States.

57.     Defendant Par Pharmaceutical Companies, Inc. ("Par") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at One Ram Ridge Road, Chestnut Ridge, New York.  At all times relevant to this Complaint, Par has marketed and sold generic pharmaceuticals in this District and throughout the United States.

58.     Defendant Perrigo New York, Inc. ("Perrigo") is a Delaware corporation with its executive offices in Allegan, Michigan and its primary business location in Bronx, NY.  It is a subsidiary of Perrigo Company, plc, an Irish company with its principal place of business in Dublin, Ireland.  At all times relevant to this Complaint, Perrigo has marketed and sold generic pharmaceuticals in this District and throughout the United States.

59.     Defendant Pfizer, Inc. ("Pifizer") is a corporation organized and existing under the laws of Delaware, with its principal place of business at 235 East 42nd Street New York, New York.  Pfizer is a global biopharmaceutical company and is the corporate parent of Defendant Greenstone.  At all times relevant to this Complaint, Pfizer has marketed and sold generic pharmaceuticals in this District and throughout the United States, and has also participated in and directed the business activities of Defendant Greenstone.

60.     Defendant Sandoz, Inc. ("Sandoz") is a corporation organized and existing under the laws of the State of Colorado, with its principal place of business in Princeton, New Jersey. Sandoz is a subsidiary of Novartis AG, a global pharmaceutical company based in Basel, Switzerland.  Sandoz is registered with the Pennsylvania Department of State as a foreign corporation and maintains a registered agent in Pennsylvania.

61.     Defendant Fougera Pharmaceuticals Inc. ("Fougera") is a New York corporation with its principal place of business in Melville, New York.  Fougera is a wholly owned subsidiary

of Defendant Sandoz, Inc.  In 2012, Sandoz acquired and integrated Fougera into its U.S.-based generic pharmaceutical business.

62.     Unless addressed individually, Fougera and Sandoz are collectively referred to herein as "Sandoz."  At all times relevant to this Complaint, Sandoz marketed and sold generic pharmaceuticals in this District and throughout the United States.

63.     Defendant Sun Pharmaceutical Industries, Inc. ("Sun") is a Michigan corporation with its principal place of business in Cranbury, New Jersey.  Sun is a wholly owned subsidiary of Sun Pharmaceutical Industries Ltd., an Indian corporation, which also owns a majority stake in Taro Pharmaceutical Industries, Ltd., and Taro's U.S. subsidiary, Defendant Taro Pharmaceutical USA, Inc.  At all times relevant to this Complaint, Sun marketed and sold generic pharmaceuticals in this District and throughout the United States.

64.     Defendant Taro Pharmaceuticals USA, Inc. ("Taro") is a corporation organized and existing under the laws of the State of New York, with its principal place of business in Hawthorne, New York.   At all times relevant to this Complaint, Taro marketed and sold generic pharmaceuticals in this District and throughout the United States.

65.     Defendant Teligent, Inc. (formerly known as IGI Laboratories, Inc.) ("Teligent") is a Delaware corporation with its principal place of business in Buena, New Jersey.  Defendant Teligent was known as IGI Laboratories, Inc. until 2015.  At all times relevant to this Complaint, Teligent sold generic pharmaceuticals in this District and throughout the United States.

66.     Defendant Teva Pharmaceuticals USA, Inc. ("Teva") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1090 Horsham Road, North Wales, Pennsylvania.  At all times relevant to this Complaint, Teva has marketed and sold generic pharmaceuticals in this District and throughout the United States.

13

67.     Defendant Upsher-Smith Laboratories, LLC (formerly known as Upsher-Smith Laboratories, Inc.) ("Upsher-Smith"), is a Minnesota limited liability company located at 6701 Evenstad Drive, Maple Grove, MN.  Upsher-Smith is a subsidiary of Sawaii Pharmaceutical Co., Ltd., a large generics company in Japan.  At all times relevant to this Complaint, Upsher-Smith has marketed and sold generic pharmaceuticals in this District and throughout the United States.

68.     Defendant Wockhardt USA LLC ("Wockhardt") is a Delaware limited liability company located in Parsippany, New Jersey.  At all times relevant to this Complaint, Wockhardt has marketed and sold generic pharmaceuticals in this District and throughout the United States.

69.     Defendant Zydus Pharmaceuticals (USA), Inc. ("Zydus") is a corporation organized and existing under the laws of the State of New Jersey with its principal place of business at 73 Route 31 North, Pennington, New Jersey.  At all times relevant to this Complaint, Zydus has marketed and sold generic pharmaceuticals in this District and throughout the United States.

### THE DEFENDANTS' CONSPIRACY

70.     Taro and Lannett conspired to raise the price of Acetazolamide Tablets, as described in Paragraphs 801-831 of the AG Topical Complaint (Doc. No. 2, Case No. 20-cv-3539 (E.D. Pa.)), which are incorporated here by reference.

71.     H.D. Smith, Heritage, and Zydus conspired to raise the price of Acyclovir, as described in Paragraphs 196-201 of the IRP/Hospital Complaint, which are incorporated here by reference.

72.     Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, Upsher-Smith, Fougera and Perrigo conspired to raise the price of Adapalene Cream, as described in Paragraphs 265-281 and 1051-1074 of the AG Topical Complaint, Paragraphs 405-409 of the IRP/Hospital Complaint, Paragraphs 165-173 of the DPP Complaint (Doc. No. 2, Case No. 20-cv-

721 (E.D. Pa.)), and Paragraphs 865-871 of the EPP Complaint (Doc. No. 2, Case No. 19-cv-6011 (E.D. Pa.)), which are incorporated here by reference.

73.     Taro, Sandoz, and Glenmark conspired to raise the price of Alclometasone Dipropionate Ointment, as described in Paragraphs 763-775 of the AG Topical Complaint, Paragraphs 174-184 of the DPP Complaint, and Paragraphs 788-798 of the EPP Complaint, which are incorporated here by reference.

74.     Actavis, Dr. Reddy's, Mylan and Par conspired to raise the price of Allopurinol, as described in Paragraphs 185-194 of the DPP Complaint and Paragraphs 1284-1300 of the EPP Complaint, which are incorporated here by reference.

75.     Sandoz, Upsher-Smith and Lannett conspired to raise the price of Amantadine HCL, as described in Paragraphs 195-204 of the DPP Complaint and Paragraphs 421-428 of the EPP Complaint, which are incorporated here by reference.

76.     McKesson, Heritage, and Teva conspired to raise the price of Amikacin, as described in Paragraphs 298-303 of the IRP/Hospital Complaint, which are incorporated here by reference.

77.     Teva and Mylan conspired to raise the price of Amiloride HCL/HCTZ as described in Paragraphs 205-216 of the DPP Complaint and Paragraphs 304-314 of the EPP Complaint, which are incorporated here by reference.

78.     Teva and Sandoz conspired to raise the price of Amoxicilllin/Clavulanate, as described in Paragraphs 217-226 of the DPP Complaint and Paragraphs 1435-1439 of the EPP Complaint, which are incorporated here by reference.

79.     Teva, Aurobindo, Impax, Mallinckrodt, Sandoz, and Actavis conspired to raise the price of Amphetamine/Dextroamphetamine Extended Release, as described in Paragraphs 329-

335 of the AG Teva Complaint (Doc. No. 106, Case No. 19-cv-2407 (E.D. Pa.)), Paragraphs 554-555 of the IRP/Hospital Complaint, Paragraphs 227-246 of the DPP Complaint, and Paragraphs 315-326 of the EPP Complaint, which are incorporated here by reference.

80.     Teva, Aurobindo, Actavis, and ABC conspired to raise the price of Amphetamine/Dextroamphetamine Immediate Release, as described in Paragraphs 336-339 of the AG Teva Complaint, Paragraphs 223-227 of the IRP/Hospital Complaint, Paragraphs 227-246 of the DPP Complaint, and Paragraphs 315-326 of the EPP Complaint, which are incorporated here by reference.

81.     Actavis and Mylan conspired to raise the price of Atenolol Chlorthalidone, as described in Paragraphs 247-256 of the DPP Complaint and Paragraphs 1201-1209 of the EPP Complaint, which are incorporated here by reference.

82.     Bausch Health and Sandoz conspired to raise the price of Atropine Sulfate, as described in Paragraphs 257-266 of the DPP Complaint, which are incorporated here by reference.

83.     Greenstone and Teva conspired to raise the price of Azithromycin, as described in Paragraphs 761-768 of the AG Teva Complaint, Paragraphs 445-448 of the IRP/Hospital Complaint, and Paragraphs 1079-1085 of the EPP Complaint, which are incorporated here by reference.

84.     Teva and Lannett conspired to raise the price of Baclofen, as described in Paragraphs 496-502 and 817-828 of the AG Teva Complaint, which are incorporated here by reference.

85.     West-Ward and Apotex conspired to raise the price of Balsalazide Disodium, as described in Paragraphs 267-275 of the DPP Complaint and Paragraphs 1086-1095 of the EPP Complaint, which are incorporated here by reference.

86.     Mylan and Sandoz conspired to raise the price of Benazepril HCTZ, as described in Paragraphs 1003-1011 of the AG Teva Complaint, which are incorporated here by reference.

87.     Fougera, Perrigo, Sandoz, Actavis, Taro, Perrigo, G&W and Teva conspired to raise the price of Betamethasone Dipropionate Lotion, as described in Paragraphs 282-288 of the AG Topical Complaint, Paragraphs 634-647 of the IRP/Hospital Complaint, Paragraphs 276-290 of the DPP Complaint, and Paragraphs 249-268 of the EPP Complaint, which are incorporated here by reference.

88.     Actavis, Sandoz, Taro, Perrigo, and G&W conspired to raise the price of Betamethasone Dipropionate Augmented, as described in Paragraphs 291-299 of the DPP Complaint and Paragraphs 249-268 of the EPP Complaint, which are incorporated here by reference.

89.     Actavis, Sandoz, Taro, Perrigo, and G&W conspired to raise the price of Betamethasone Dipropionate Clotrimazole, as described in Paragraphs 300-310 of the DPP Complaint and Paragraphs 249-268 of the EPP Complaint, which are incorporated here by reference.

90.     Fougera, McKesson, Sandoz, Actavis, Taro, Perrigo, G & W, and Teva conspired to raise the price of Betamethasone Valerate Lotion, as described in Paragraphs 456-470 of the AG Topical Complaint, Paragraphs 634-647 of the IRP/Hospital Complaint, Paragraphs 311-322 of the DPP Complaint, and Paragraphs 249-268 of the EPP Complaint, which are incorporated here by reference.

91.     Sandoz and Actavis conspired to raise the price of Betamethasone Valerate Ointment, as described in Paragraphs 640-652 of the AG Topical Complaint, which are incorporated here by reference.

92.     Actavis, Amneal, Dr. Reddy's, Heritage, Lannett, Mylan, Par, Sandoz, Upsher-Smith, Taro and Teva conspired to raise the price of Bethanechol Chloride, as described in Paragraphs 485-488 and 496 of the IRP/Hospital Complaint, Paragraphs 323-331 of the DPP Complaint, and Paragraphs 1440-1445 of the EPP Complaint, which are incorporated here by reference.

93.     Sandoz, Perrigo and Mylan conspired to raise the price of Bromocriptine Mesylate Tablets, as described in Paragraphs 1026-1050 of the AG Topical Complaint, Paragraphs 332-341 of the DPP Complaint, and Paragraphs 747-757 of the EPP Complaint, which are incorporated here by reference.

94.     Teva, Mylan, and Par conspired to raise the price of Budesonide DR Capsules, as described in Paragraphs 384-390 of the AG Teva Complaint, Paragraphs 572-575 of the IRP/Hospital Complaint, Paragraphs 342-358 of the DPP Complaint, and Paragraphs 758-769 of the EPP Complaint, which are incorporated here by reference.

95.     Teva, Mylan, Par, Sandoz, and Actavis conspired to raise the price of Budesonide Inhalation, as described in Paragraphs 352-355 of the AG Teva Complaint, Paragraphs 559-562 of the IRP/Hospital Complaint, Paragraphs 342- 358 of the DPP Complaint, and Paragraphs 758-769 of the EPP Complaint, which are incorporated here by reference.

96.     Teva and Sandoz conspired to raise the price of Bumetanide, as described in Paragraphs 1253-1256 of the EPP Complaint, which are incorporated here by reference.

97.     ABC, Teva, and Sun conspired to raise the price of Buprenorphine, as described in Paragraphs 237-239 of the IRP/Hospital Complaint, which are incorporated here by reference.

98.     Teva, Mylan and Actavis/Watson conspired to raise the price of Buspirone HCL, as described in Paragraphs 359-367 of the DPP Complaint and Paragraphs 596-599 of the EPP Complaint, which are incorporated here by reference.

99.     Mylan, West-Ward, and Apotex conspired to raise the price of Butorphanol Tartrate, as described in Paragraphs 368-377 of the DPP Complaint and Paragraphs 1096-1103 of the EPP Complaint, which are incorporated here by reference.

100.    Teva and Greenstone conspired to raise the price of Cabergoline, as described in Paragraphs 324-328 of the AG Teva Complaint, Paragraphs 262-265 of the IRP/Hospital Complaint, and Paragraphs 1461-1467 of the EPP Complaint, which are incorporated here by reference.

101.    Sandoz and Perrigo conspired to raise the price of Calcipotriene Betamethasone Dipropionate Ointment, as described in Paragraphs 1075-1100 of the AG Topical Complaint, which are incorporated here by reference.

102.    Fougera, Hi-Tech, G & W, and Impax Pharmaceuticals conspired to raise the price of Calcipotriene Solution, as described in Paragraphs 428-437 of the AG Topical Complaint, which are incorporated here by reference.

103.    Teva, Mylan, Dr. Reddy's, and McKesson conspired to raise the price of capecitabine, as described in Paragraphs 205-218 of the AG Teva Complaint, Paragraphs 288-297 of the IRP/Hospital Complaint, and Paragraphs 378-387 of the DPP Complaint, and Paragraphs 1133-1139 of the EPP Complaint, which are incorporated here by reference.

104.    Mylan, West-Ward, and Wockhardt conspired to raise the price of Captopril, as described in Paragraphs 388-397 of the DPP Complaint and Paragraphs 872-883 of the EPP Complaint, which are incorporated here by reference.

105. Taro, Sandoz, Teva, Apotex, and Torrent conspired to raise the price of Carbamazepine ER Tablets, Paragraphs 201-211 and Paragraphs 865-885 of the AG Topical Complaint, Paragraphs 477-481 of the IRP/Hospital Complaint, Paragraphs 398-431 of the DPP Complaint, and Paragraphs 799-816 of the EPP Complaint, which are incorporated here by reference.

106. Par and Teva conspired to raise the price of Carisoprodol, as described in Paragraphs 432-440 of the DPP Complaint, which are incorporated here by reference.

107. Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Cefdinir, as described in Paragraphs 405-408 and 410 of the IRP/Hospital Complaint, Paragraphs 441-451 of the DPP Complaint, and Paragraphs 817-822 of the EPP Complaint, which are incorporated here by reference.

108. Sandoz and Aurobindo conspired to raise the price of Cefpodoxime Proxetil Oral Suspension and Tablets, as described in Paragraphs 1190-1204 of the AG Topical Complaint, which are incorporated here by reference.

109. Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Cefprozil, as described in Paragraphs 405-408 and 410 of the IRP/Hospital Complaint, Paragraphs 441-451 of the DPP Complaint, and Paragraphs 817-822 of the EPP Complaint, which are incorporated here by reference.

110. Lupin, Aurobindo, and Citron conspired to raise the price of Cefuroxime Axetil as described in Paragraphs 452-461 of the DPP Complaint and Paragraphs 1104-1116 of the EPP Complaint, which are incorporated here by reference.

111. Teva, ABC, WBAD, Apotex, and Actavis conspired to raise the price of Celecoxib, as described in Paragraphs 356-362 of the AG Teva Complaint, Paragraphs 266-273 of the

20

IRP/Hospital Complaint, Paragraphs 462-471 of the DPP Complaint, and Paragraphs 1455-1460 of the EPP Complaint, which are incorporated here by reference.

112.    Actavis, Breckenridge, Greenstone, Heritage, Teva, Mylan, Rising, Sandoz, Taro, Versapharm, and Lupin conspired to raise the price of Cephalexin Oral Suspension, as described in Paragraphs 751-760 of the AG Teva Complaint, Paragraphs 428-432 of the IRP/Hospital Complaint, Paragraphs 472-491 of the DPP Complaint, and Paragraphs 1052-1062 of the EPP Complaint, which are incorporated here by reference.

113.    Sandoz and Upsher-Smith conspired to raise the price of Chlorpromazine HCL as described in Paragraphs 492-501 of the DPP Complaint Paragraphs 355-364 of the EPP Complaint, which are incorporated here by reference.

114.    Sandoz, Par, and Upsher-Smith conspired to raise the price of Cholestyramine, as described in Paragraphs 502-511 of the DPP Complaint Paragraphs 823-833 of the EPP Complaint, which are incorporated here by reference.

115.    Akorn, Perrigo, Paddock Laboratories, LLC, Fougera, Glenmark and G&W conspired to raise the price of Ciclopirox Cream as described in Paragraphs 504-537 and 1535-1554 of the AG Topical Complaint, Paragraphs 512-521 of the DPP Complaint, and Paragaphs 834-843 of the EPP Complaint, which are incorporated here by reference.

116.    Perrigo, Actavis, Sandoz and Taro conspired to raise the price of Ciclopirox Shampoo as described in Paragraphs 627-639 of the AG Topical Complaint and Paragraphs 512-521 of the DPP Complaint, which are incorporated here by reference.

117.    Hi-Tech, Harris Pharamaceutical, Versapharm, G&W and Perrigo conspired to raise the price of Ciclopirox Solution, as described in Paragraphs 1454-1474 of the AG Topical

Complaint and Paragraphs 512-521 of the DPP Complaint, which are incorporated here by reference.

118.    Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Cimetidine, as described in Paragraphs 405-408 and 414-415 of the IRP/Hospital Complaint, Paragraphs 522-533 of the DPP Complaint, and Paragraphs 553-561 of the EPP Complaint, which are incorporated here by reference.

119.    Teva, Actavis, Heritage, Lannett, Mylan, Par, Sandoz, Taro, Amneal, and Dr. Reddy's conspired to raise the price of Ciprofloxacin HCl, as described in Paragraphs 902-910 of the AG Teva Complaint, and Paragraphs 485-492 of the IRP/Hospital Complaint, and Paragraphs 1375-1385 of the EPP Complaint, which are incorporated here by reference.

120.    Actavis and Teva conspired to raise the price of Clarithromycin ER Tablets, as described in Paragraphs 769-782 of the AG Teva Complaint, Paragraphs 449-456 of the IRP/Hospital Complaint, Paragraphs 534-543 of the DPP Complaint, and Paragraphs 1117-1123 of the EPP Complaint, which are incorporated here by reference.

121.    Teva and Sandoz conspired to raise the price of Clemastine Fumarate, as described in Paragraphs 1036-1040 of the EPP Complaint, which are incorporated here by reference.

122.    Fougera, Actavis, Sandoz, Greenstone, Pfizer, Taro and Perrigo conspired to raise the price of Clindamycin Phosphate, as described in Paragraphs 1298-1352 of the AG Topical Complaint, Paragraphs 544-553 of the DPP Complaint, and Paragraphs 464-477 of the EPP Complaint, which are incorporated here by reference.

123.    Sandoz, Hi-Tech, and Taro conspired to raise the price of Clobetasol Propionate as described in Paragraphs 865-885 of the AG Topical Complaint, which are incorporated here by reference.

124.    Sandoz, Mylan, and Taro conspired to raise the price of Clomipramine HCl, as described in Paragraphs 1032-1050 of the AG Teva Complaint, which are incorporated here by reference.

125.    Teva, Mylan, and Actavis conspired to raise the price of clonidine-TTS patch, as described in Paragraphs 178-192 and 343-351 of the AG Teva Complaint, Paragraphs 505-511 of the IRP/Hospital Complaint, Paragraphs 554-570 of the DPP Complaint, and Paragraphs 373-385 of the EPP Complaint, which are incorporated here by reference.

126.    Actavis, Glenmark, Sandoz, Taro, Teva, and Zydus conspired to raise the price of Clotrimazole, as described in Paragraphs 471-481 of the IRP/Hospital Complaint, Paragraphs 398-431 of the DPP Complaint, and Paragraphs 1301-1312 of the EPP Complaint, which are incorporated here by reference.

127.    Fougera, Sandoz, Taro, and Actavis conspired to raise the price of Clotrimazole Betamethasone Dipropionate Cream and Lotion, as described in Paragraphs 289-312 of the AG Topical Complaint, Paragraphs 300-310 of the DPP Complaint, and Paragraphs 1301-1312 of the EPP Complaint, which are incorporated here by reference.

128.    Sandoz, Taro, Teva, Glenmark and Major Pharmaceuticals conspired to raise the price of Clotrimazole 1% Cream, as described in Paragraphs 962-973 of the AG Topical Complaint, and Paragraphs 1301-1312 of the EPP Complaint, which are incorporated here by reference.

129.    Actavis, Breckenridge, Greenstone, Heritage, Impax, Lupin, Mylan, Rising, Sandoz, Taro, Teva, and Versapharm conspired to raise the price of cyproheptadine HCl, as described in Paragraphs 428-430 and 433-438 of the IRP/Hospital Complaint and Paragraphs 562-573 of the EPP Complaint, which are incorporated here by reference.

130.   Teva and Actavis conspired to raise the price of Desmopressin Acetate, as described in Paragraphs 571-581 of the DPP Complaint and Paragraphs 1386-1391 of the EPP Complaint, which are incorporated here by reference.

131.   Teva and Glenmark conspired to raise the price of Desogestrel/Ethinyl Estradiol Tablets, as described in Paragraphs 488-491 of the AG Teva Complaint, Paragraphs 597-598 of the IRP/Hospital Complaint, and Paragraphs 1313-1319 of the EPP Complaint, which are incorporated here by reference.

132.   Actavis, Fougera, and Sandoz conspired to raise the price of Desonide Lotion, as described in Paragraphs 610-626 of the AG Topical Complaint, which are incorporated here by reference.

133.   Taro, Perrigo and Sandoz conspired to raise the price of Desonide Ointment, as described in Paragraphs 832-848 of the AG Topical Complaint, which are incorporated here by reference.

134.   Taro, Sandoz, Aurobindo and Glenmark conspired to raise the price of Desoximetasone Ointment, as described in Paragraphs 1153-1179 of the AG Topical Complaint, which are incorporated here by reference.

135.   Teva, Sandoz, and Par conspired to raise the price of Dexmethylphenidate HCL Extended Release, as described in Paragraphs 248-256 of the AG Teva Complaint, Paragraphs 519-522 of the IRP/Hospital Complaint, Paragraphs 582-596 of the DPP Complaint, and Paragraphs 1161-1172 of the EPP Complaint, which are incorporated here by reference.

136.   Teva and Actavis conspired to raise the price of Dextroamphetamine Amphetamine ER, as described in Paragraphs 554-555 of the IRP/Hospital Complaint, which are incorporated here by reference.

24

137.     Teva, Actavis, Aurobindo, Impax, and Mallinckrodt conspired to raise the price of Dextroamphetamine Sulfate Extended Release, as described in Paragraphs 340-342 of the AG Teva Complaint, Paragraphs 556-558 of the IRP/Hospital Complaint, Paragraphs 597-617 of the DPP Complaint, and Paragraphs 327-343 of the EPP Complaint, which are incorporated here by reference.

138.     Teva, Sandoz, and Par conspired to raise the price of Dexmethylphenidate HCL, as described in Paragraphs 1161-1172 of the EPP Complaint, which are incorporated here by reference.

139.     Teva, Mylan, and Sandoz conspired to raise the price of Diclofenac Potassium, as described in Paragraphs 618-631 of the DPP Complaint and Paragraphs 689-699 of the EPP Complaint, which are incorporated here by reference.

140.     Teva and Sandoz conspired to raise the price of Dicloxacillin Sodium, as described in Paragraphs 1257-1260 of the EPP Complaint, which are incorporated here by reference.

141.     Actavis, Breckenridge, Greenstone, Heritage, Lupin, Mylan, Rising, Sandoz, Taro, Teva, and Versapharm conspired to raise the price of Diflunisal Tablets, as described in Paragraphs 428-430 and 463-466 of the IRP/Hospital Complaint and Paragraphs 1261-1268 of the EPP Complaint, which are incorporated here by reference.

142.     Teva and Mylan conspired to raise the price of Diltiazem HCL, as described in Paragraphs 632-647 of the DPP Complaint and Paragraphs 884-896 of the EPP Complaint, which are incorporated here by reference.

143.     Mylan and Greenstone conspired to raise the price of Diphenoxylate Atropine, as described in Paragraphs 648-657 of the DPP Complaint and Paragraphs 1210-1219 of the EPP Complaint, which are incorporated here by reference.

144.     Teva and Actavis conspired to raise the price of Disopyramide Phosphate, as described in Paragraphs 961-965 of the EPP Complaint, which are incorporated here by reference.

145.     Walgreens, Breckenridge, and Teva conspired to raise the price of disulfiram, as described in Paragraphs 259-261 of the IRP/Hospital Complaint, which are incorporated here by reference.

146.     Teva, Mylan, Apotex, Par, and Greenstone conspired to raise the price of Doxazosin Mesylate, as described in Paragraphs 658-673 of the DPP Complaint and Paragraphs 897-910 of the EPP Complaint, which are incorporated here by reference.

147.     Teva, Actavis, and Lupin conspired to raise the price of Drospirenone and Ethinyl Estradiol, as described in Paragraphs 276-292 of the AG Teva Complaint, Paragraphs 530-534 of the IRP/Hospital Complaint, Paragraphs 697-707 of the DPP Complaint, and Paragraphs 844-851 of the EPP Complaint, which are incorporated here by reference.

148.     Perrigo, Sandoz, Taro and Teligent conspired to raise the price of Econazole Nitrate Cream, as described in Paragraphs 909-923 of the AG Topical Complaint, which are incorporated here by reference.

149.     Sandoz and Greenstone conspired to raise the price of Eplerenone Tablets, as described in Paragraphs 1376-1382 of the AG Topical Complaint, which are incorporated here by reference.

150.     Teva, Mylan, Wockhardt, and Taro conspired to raise the price of Enalapril Maleate, as described in Paragraphs 391-410 and 650-662 of the AG Teva Complaint, Paragraphs 576-584 of the IRP/Hospital Complaint, Paragraphs 708-726 of the DPP Complaint, and Paragraphs 973-993 of the EPP Complaint, which are incorporated here by reference.

151.    Teva and Par conspired to raise the price of Entecavir, as described in Paragraphs 374-383 of the AG Teva Complaint, Paragraphs 568-571 of the IRP/Hospital Complaint, Paragraphs 727-737 of the DPP Complaint, and Paragraphs 1393-1398 of the EPP Complaint, which are incorporated here by reference.

152.    Harvard, M&D, Greenstone, and Upsher-Smith conspired to raise the price of Eplerenone, as described in Paragraphs 209-213 of the IRP/Hospital Complaint, which are incorporated here by reference.

153.    Fougera, Perrigo, Sandoz, and Wockhardt conspired to raise the price of Erythromycin, as described in Paragraphs 334-365 of the AG Topical Complaint, which are incorporated here by reference.

154.    Teva and Actavis conspired to raise the price of Estazolam, as described in Paragraphs 769-782 of the AG Teva Complaint, Paragraphs 449-456 of the IRP/Hospital Complaint, and Paragraphs 1220-1226 of the EPP Complaint, which are incorporated here by reference.

155.    Teva, Mylan and Actavis conspired to raise the price of Estradiol, as described in Paragraphs 738-749 of the DPP Complaint and Paragraphs 600-609 of the EPP Complaint, which are incorporated here by reference.

156.    Teva and Breckenridge conspired to raise the price of Estradiol, as described in Paragraphs 750-759 of the DPP Complaint Paragraphs 1063-1067 of the EPP Complaint, which are incorporated here by reference.

157.    Morris & Dickson, Cardinal, Dr. Reddy's, Sun, and Roxane conspired to raise the price of eszopiclone, as described in Paragraphs 348-351 of the IRP/Hospital Complaint, which are incorporated here by reference.

158.    VersaPharm, G&W, STI Pharma, Lupin, and Teva conspired to raise the price of Ethambutol HCL Tablets, as described in Paragraphs 1557-1573 of the AG Topical Complaint, which are incorporated here by reference.

159.    Teva and Sandoz conspired to raise the price of Ethinyl estradiol and levonorgestrel, as described in Paragraphs 219-224 of the AG Teva Complaint, Paragraphs 512-515 of the IRP/Hospital Complaint, Paragraphs 760-769 of the DPP Complaint, and Paragraphs 511-515 of the EPP Complaint, which are incorporated here by reference.

160.    Akorn/Versapharm and Teva conspired to raise the price of Ethosuximide, as described in Paragraphs 610-619 of the EPP Complaint, which are incorporated here by reference.

161.    Teva, Sandoz, Taro, Apotex, and Zydus conspired to raise the price of Etodolac ER, as described in Paragraphs 473-481 and 705-720 of the AG Teva Complaint, Paragraphs 788-795 of the AG Topical Complaint, Paragraphs 422-427 of the IRP/Hospital Complaint, Paragraphs 658-696 of the DPP Complaint, and Paragraphs 516-521 of the EPP Complaint, which are incorporated here by reference.

162.    Taro, Teva and Apotex conspired to raise the price of Etodolac Capules, as described in Paragraphs 522-526 of the EPP Complaint, which are incorporated here by reference.

163.    Taro, Teva, Sandoz, and Apotex conspired to raise the price of Etodolac Tablets, as described in Paragraphs 527-541 of the EPP Complaint, which are incorporated here by reference.

164.    Greenstone and West-Ward conspired to raise the price of exemestane, as described in Paragraphs 770-777 of the DPP Complaint, which are incorporated here by reference.

165.    Teva, Mylan, Zydus, Lupin, Perrigo, Dr. Reddy's, and Cardinal conspired to raise the price of Fenofibrate, as described in Paragraphs 168-177 and 431-447 of the AG Teva

Complaint, Paragraphs 497-504 of the IRP/Hospital Complaint, Paragraphs 778-794 of the DPP Complaint, and Paragraphs 770-781 of the EPP Complaint, which are incorporated here by reference.

166.    Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Fluconazole, as described in Paragraphs 405-408 and 411 of the IRP/Hospital Complaint, Paragraphs 795-812 of the DPP Complaint, and Paragraphs 911-923 of the EPP Complaint, which are incorporated here by reference.

167.    Teva, Taro, and Sandoz conspired to raise the price of Fluocinonide, as described in Paragraphs 829-846 of the AG Teva Complaint, Paragraphs 313- 333 and 1000-1018 of the AG Topical Complaint, and Paragraphs 477-481 of the IRP/Hospital Complaint, which are incorporated here by reference.

168.    Perrigo, Valeant, Glenmark, Taro, Sandoz, conspired to raise the price of Fluocinonide .1% Cream, as described in Paragraphs 924-947 of the AG Topical Complaint, which are incorporated here by reference.

169.    Sandoz, Taro, Foguera, Teligent and G & W conspired to raise the price of Fluocinolone Acetonide Cream, as described in Paragraphs 438-455 of the AG Topical Complaint, Paragraphs 648-660 of the IRP/Hospital Complaint, Paragraphs 813-823 of the DPP Complaint, and Paragraphs 429-442 of the EPP Complaint, which are incorporated here by reference.

170.    Sandoz, Taro and Teva conspired to raise the price of Fluocinonide Ointment, as described in Paragraphs 695-707 of the AG Topical Complaint, which are incorporated here by reference.

171.    Fougera, Sandoz, Taro and Actavis conspired to raise the price of Fluocinonide Ointment, as described in Paragraphs 776-787 of the AG Topical Complaint, which are incorporated here by reference.

172.    Taro, Teva, Sandoz and G & W conspired to raise the price of Fluocinonide Gel, as described in Paragraphs 974-1018 of the AG Topical Complaint, which are incorporated here by reference.

173.    Teva, Mylan and Par conspired to raise the price of Fluoxetine HCL, as described in Paragraphs 824-837 of the DPP Complaint and Paragraphs 1327-1337 of the EPP Complaint, which are incorporated here by reference.

174.    Teva and Mylan conspired to raise the price of Flurbiprofen as described in Paragraphs 365-372 of the EPP Complaint, which are incorporated here by reference.

175.    Glenmark, Akorn, Apotex, West-Ward, Sandoz, Fougera and Perrigo conspired to raise the price of Fluticasone Propionate Lotion (60ml) as described in Paragraphs 1127-1152 of the AG Topical Complaint and Paragraphs 838-845 of the DPP Complaint, which are incorporated here by reference.

176.    Teva, Par, and Actavis conspired to raise the price of Flutamide, as described in Paragraphs 1399-1405 of the EPP Complaint, which are incorporated here by reference.

177.    Teva and Mylan conspired to raise the price of Fluvastatin Sodium, as described in Paragraphs 1269-1276 of the EPP Complaint, which are incorporated here by reference.

178.    Teva, Aurobindo, and Glenmark conspired to raise the price of Gabapentin tablets, as described in Paragraphs 492-495 of the AG Teva Complaint, Paragraphs 599-601 of the IRP/Hospital Complaint, Paragraphs 846-858 of the DPP Complaint, and Paragraphs 1446-1454 of the EPP Complaint, which are incorporated here by reference.

179. Dr. Reddy's, Teva, and Actavis conspired to raise the price of glimepiride, as described in Paragraphs 902-910 of the AG Teva Complaint, Paragraphs 489-492 of the IRP/Hospital Complaint, and Paragraphs 859-869 of the DPP Complaint, Paragraphs 1406-1411, which are incorporated here by reference.

180. Actavis, Amneal, Dr. Reddy's, Heritage, Lannett, Mylan, Par, Sandoz, Taro, and Teva conspired to raise the price of Griseofulvin, as described in Paragraphs 911-914 of the AG Teva Complaint, Paragraphs 1227-1258 of the AG Topical Complaint, Paragraphs 485-488 and 493-495 of the IRP/Hospital Complaint, Paragraphs 870-881 of the DPP Complaint, and Paragraphs 1412-1417 of the EPP Complaint, which are incorporated here by reference.

181. Taro, Sandoz, Perrigo and G&W conspired to raise the price of Halobetasol Propionate Cream and Ointment, as described in Paragraphs 1394-1440 of the AG Topical Complaint, Paragraphs 882-891 of the DPP Complaint, and Paragraphs 648-663 of the EPP Complaint, which are incorporated here by reference.

182. Mylan, Zydus, and Sandoz conspired to raise the price of Haloperidol, as described in Paragraphs 993-1002 of the AG Teva Complaint, Paragraphs 615-620 of the IRP/Hospital Complaint, Paragraphs 892-907 of the DPP Complaint, and Paragraphs 994-1007 of the EPP Complaint, which are incorporated here by reference.

183. Amneal, Mallinckrodt, Par, and Teva conspired to raise the price of hydrocodone acetaminophen, as described in Paragraphs 908-916 of the DPP Complaint, which are incorporated here by reference.

184. G&W, Perrigo, and County Line Pharmaceuticals conspired to raise the price of Hydrocortisone Acetate Suppositories (Anucort HC), as described in Paragraphs 1475-1502 of the AG Topical Complaint, which are incorporated here by reference.

185.    Taro, G&W, and Perrigo conspired to raise the price of Hydrocortisone Valerate Cream, as described Paragraphs 886-891 of the AG Topical Complaint, Paragraphs 917-926 of the DPP Complaint, and Paragraphs 249-268 of the EPP Complaint, which are incorporated here by reference.

186.    Teva and Par conspired to raise the price of Hydroxyurea, as described in Paragraphs 188-197 of the EPP Complaint, which are incorporated here by reference.

187.    Actavis, Breckenridge, Greenstone, Heritage, Lupin, Mylan, Rising, Sandoz, Taro, Teva, and Versapharm conspired to raise the price of Hydroxyzine Pamoate, as described in Paragraphs 428-430 and 463-466 of the IRP/Hospital Complaint and Paragraphs 1068-1073 of the EPP Complaint, which are incorporated here by reference.

188.    Fougera, Sandoz, Taro, and Perrigo conspired to raise the price of Imiquimod, as described Paragraphs 212-257 of the AG Topical Complaint, which are incorporated here by reference.

189.    Teva and Lupin conspired to raise the price of Irbesartan, as described in Paragraphs 270-275 of the AG Teva Complaint, Paragraphs 927-939 of the DPP Complaint, and Paragraphs 443-450 of the EPP Complaint, which are incorporated here by reference.

190.    Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Isoniazid, as described in Paragraphs 405-408 and 413 of the IRP/Hospital Complaint and Paragraphs 966-972 of the EPP Complaint, which are incorporated here by reference.

191.    Sandoz, Par, and West-Ward conspired to raise the price of Isosorbide Dinitrate, as described in Paragraphs 940-948 of the DPP Complaint and Paragraphs 451-463 of the EPP Complaint, which are incorporated here by reference.

192.     Walgreens, Amerisource, Dr. Reddy's, and Teva conspired to raise the price of Isotretinoin, as described in Paragraphs 274-276 of the IRP/Hospital Complaint, which are incorporated here by reference.

193.     Teva, Taro, Sandoz, G & W, Apotex, and Mylan conspired to raise the price of Ketoconazole, as described in Paragraphs 783-794 of the AG Teva Complaint, Paragraphs 974-999 of the AG Topical Complaint, Paragraphs 457-462 of the IRP/Hospital Complaint, Paragraphs 949-962 of the DPP Complaint, and Paragraphs 1173-1189 of the EPP Complaint, which are incorporated here by reference.

194.     Teva, Taro, Sandoz, and G & W conspired to raise the price of Ketoconazole Cream, as described in Paragraphs 974-999 of the AG Topical Complaint, and Paragraphs 1173-1189 of the EPP Complaint, which are incorporated here by reference.

195.     Apotex, Glenmark, Lupin, Mylan, Sandoz, Taro, Teva, and Zydus conspired to raise the price of Ketoprofen, as described in Paragraphs 417-421 of the IRP/Hospital Complaint, Paragraphs 963-974 of the DPP Complaint, and Paragraphs 664-672 of the EPP Complaint, which are incorporated here by reference.

196.     Apotex, Glenmark, Lupin, Mylan, Sandoz, Taro, Teva, and Zydus conspired to raise the price of Ketorolac, as described in Paragraphs 417-421 of the IRP/Hospital Complaint, Paragraphs 975-984 of the DPP Complaint, and Paragraphs 700-707 of the EPP Complaint, which are incorporated here by reference.

197.     Teva, Sandoz, and Actavis conspired to raise the price of Labetalol, as described in Paragraphs 553-556 of the AG Teva Complaint, Paragraphs 397-401 of the IRP/Hospital Complaint, Paragraphs 985-994 of the DPP Complaint, and Paragraphs 478-490 of the EPP Complaint, which are incorporated here by reference.

33

198.   Teva, Lupin, Camber, and Aurobindo conspired to raise the price of Lamivudine/Zidovudine, as described in Paragraphs 257-269 of the AG Teva Complaint, Paragraphs 523-526 and 605-609 of the IRP/Hospital Complaint, Paragraphs 995-1006 of the DPP Complaint, and Paragraphs 491-498 of the EPP Complaint, which are incorporated here by reference.

199.   McKesson, Amerisource, Walgreens, Dr.Reddy's, Par, and Wilshire conspired to raise the price of Lamotrigine ER, as described in Paragraphs 314-324 of the IRP/Hospital Complaint, which are incorporated here by reference.

200.   Pfizer, Greenstone, Akorn, Bausch Health, Sandoz, and Valeant conspired to raise the price of Latanoprost Drops, as described in Paragraphs 1353-1375 of the AG Topical Complaint, Paragraphs 688-693 in the IRP/Hospital Complaint, and Paragraphs 1007-1014 of the DPP Complaint, which are incorporated here by reference.

201.   Sandoz and Teva conspired to raise the price of Levonorgestrel-Ethinylestradiol, as described in Paragraphs 512-515 of the IRP/Hospital Complaint, Paragraphs 760-769 of the DPP Complaint, and Paragraphs 511-515 of the EPP Complaint, which are incorporated here by reference.

202.   Mylan, Sandoz, and Lannett conspired to raise the price of Levothyroxine, as described in Paragraphs 1012-1031 of the AG Teva Complaint, which are incorporated here by reference.

203.   Sandoz, Taro and Akorn conspired to raise the price of Lidocaine HCL, as described in Paragraphs 499-510 of the EPP Complaint, which are incorporated here by reference.

204.   Fougera, Taro, Sandoz, Akorn, and Hi-Tech, conspired to raise the price of Lidocaine Ointment, as described in Paragraphs 540-552 and 708-723 of the AG Topical

Complaint, Paragraphs 661-671 of the IRP/Hospital Complaint, and Paragraphs 1015-1023 of the DPP Complaint, which are incorporated here by reference.

205.     ABC, Teva, and Mylan conspired to raise the price of loperamide HCl, as described in Paragraphs 233-236 of the IRP/Hospital Complaint, Paragraphs 1024-1036 of the DPP Complaint, and Paragraphs 620-630 of the EPP Complaint, which are incorporated here by reference.

206.     Greenstone and Teva conspired to raise the price of Medroxyprogesterone, as described in Paragraphs 761-768 of the AG Teva Complaint, Paragraphs 782-787 of the EPP Complaint, and Paragraphs 445-448 of the IRP/Hospital Complaint which are incorporated here by reference.

207.     Actavis and Lupin conspired to raise the price of Metformin ER (F) [Fortamet], as described in Paragraphs 1037-1045 of the DPP Complaint, Paragraphs 1476-1483 of the EPP Complaint, which are incorporated here by reference.

208.     West-Ward and Mallinckrodt conspired to raise the price of Methadone HCL, as described in Paragraphs 1046-1055 of the DPP Complaint, Paragraphs 1338-1348 of the EPP Complaint, which are incorporated here by reference.

209.     Fera, Sandoz and Perrigo, conspired to raise the price of Methazolamide Tablets as described in Paragraphs 1111-1124 of the AG Topical Complaint, which are incorporated here by reference.

210.     Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, West-Ward, and Upsher-Smith conspired to raise the price of Methotrexate Sodium, as described in Paragraphs 405-408 and 414-415  of the IRP/Hospital Complaint, Paragraphs 1056-1069 of the

DPP Complaint, and Paragraphs 673-680 of the EPP Complaint, which are incorporated here by reference.

211.    Mallinckrodt, Actavis, Impax, Par, and Sandoz conspired to raise the price of Methylphenidate HCL Tablets and Methylphenidate HCL ER Tablets as described in Paragraphs 1261-1277 of the AG Topical Complaint, Paragraphs 1070--1079 of the DPP Complaint,  and Paragraphs 720-736 of the EPP Complaint, which are incorporated here by reference.

212.    Sandoz, Par, Greenstone, Breckenridge, and Cadista conspired to raise the price of Methylprednisolone, as described in Paragraphs 1080-1089 of the DPP Complaint and Paragraphs 290-303 of the EPP Complaint, which are incorporated here by reference.

213.    G&W, Impax, Sandoz, Taro, Teva, and Bausch/Oceanside conspired to raise the price of Metronidazole as described in Paragraphs 344-354 of the EPP Complaint, which are incorporated here by reference.

214.    Sandoz and Taro, conspired to raise the price of Metronidazole 1% Gel, as described in Paragraphs 948-961 of the AG Topical Complaint, which are incorporated here by reference.

215.    Fougera, Sandoz, and Tara conspired to raise the price of Metronidazole Topical .75% Gel, as described in Paragraphs 471-500 of the AG Topical Complaint, which are incorporated here by reference.

216.    Actavis, Teva, Sandoz, Fougera, G&W, and Harris Pharmaceuticals conspired to raise the price of Metronidazole Cream and Lotion, as described in Paragraphs 402-427 of the AG Topical Complaint and Paragraphs 348-350 of the EPP Complaint, which are incorporated here by reference.

217.    G&W, Impax, Sandoz, Taro, Teva, and Bausch/Oceanside conspired to raise the price of Metronidazole Vaginal Cream, as described in Paragraphs 344-354 of the EPP Complaint, which are incorporated here by reference.

218.    Harvard, Actavis, Dr. Reddy's, and Par conspired to raise the price of Metroprolol succinate ER, as described in Paragraphs 205-208 of the IRP/Hospital Complaint, which are incorporated here by reference.

219.    ABC and Teva conspired to raise the price of Modafinil, as described in Paragraphs 228-232 of the IRP/Hospital Complaint, which are incorporated here by reference.

220.    Teva and Glenmark conspired to raise the price of Moexipril Hydrochloride Tablets, as described in Paragraphs 482-487 of the AG Teva Complaint, Paragraphs 593-596 of the IRP/Hospital Complaint, Paragraphs 1090-1104 of the DPP Complaint, and Paragraphs 924-934 of the EPP Complaint, which are incorporated here by reference.

221.    Teva and Glenmark conspired to raise the price of Moexipril Hydrochloride Tablets HCTZ, as described in Paragraphs 924-934 of the EPP Complaint, which are incorporated here by reference.

222.    Glenmark, Perrigo, Aurobindo and G&W conspired to raise the price of Mometasone Furoate, as described in Paragraphs 1535-1554 of the AG Topical Complaint, which are incorporated here by reference.

223.    Teva, Sandoz, Glenmark and Actavis conspired to raise the price of Nabumetone, as described in Paragraphs 935-942 of the EPP Complaint, which are incorporated here by reference.

224.    Teva, Mylan, Greenstone, and Sandoz conspired to raise the price of nadolol, as described in Paragraphs 542-552 of the AG Teva Complaint, Paragraphs 392-396 of the

IRP/Hospital Complaint, Paragraphs 1105-1122 of the DPP Complaint, and Paragraphs 631-647 of the EPP Complaint, which are incorporated here by reference.

225.    Sagent Pharmaceuticals, Sandoz, and Aurobindo conspired to raise the price of Nafcillin Sodium Injectable Vials, as described in Paragraphs 1180-1189 of the AG Topical Complaint, which are incorporated here by reference.

226.    Glenmark and Amneal conspired to raise the price of Naproxen Sodium, as described in Paragraphs 1123-1131 of the DPP Complaint and Paragraphs 1468-1475 of the EPP Complaint, which are incorporated here by reference.

227.    Baucsh Health and Sandoz conspired to raise the price of Neomycin-Polymyxin-Hydroxycortisone, as described in Paragraphs 694-699 of the IRP/Hospital Complaint and Paragraphs 1162-1169 of the DPP Complaint, which are incorporated here by reference.

228.    Teva, Lupin, and Zydus conspired to raise the price of Niacin ER, as described in Paragraphs 461-472 and 729-739 of the AG Teva Complaint, Paragraphs 589-592 of the IRP/Hospital Complaint, Paragraphs 1132-1148 of the DPP Complaint, and Paragraphs 1227-1238 of the EPP Complaint, which are incorporated here by reference.

229.    Teva, Mylan, and Alvogen conspired to raise the price of Nitrofurantoin MAC Capsules, as described in Paragraphs 557-559 of the AG Teva Complaint, Paragraphs 402-404 of the IRP/Hospital Complaint, Paragraphs 1149-1161 of the DPP Complaint, and Paragraphs 269-281 of the EPP Complaint, which are incorporated here by reference.

230.    Teva, Breckenridge, and Amneal conspired to raise the price of Norethindrone Acetate, as described in Paragraphs 503-505 of the AG Teva Complaint, Paragraphs 433-438 of the IRP/Hospital Complaint, Paragraphs 750-759 of the DPP Complaint, and Paragraphs 1063-1067 and 1418-1423 of the EPP Complaint, which are incorporated here by reference.

231.    Teva and Lupin conspired to raise the price of Norethindrone/ethinyl estradiol, as described in Paragraphs 293-298 of the AG Teva Complaint, Paragraphs 535-538 of the IRP/Hospital Complaint, Paragraphs 1170-1182 of the DPP Complaint, and Paragraphs 1140-1146 of the EPP Complaint, which are incorporated here by reference.

232.    Teva, Actavis, and Taro conspired to raise the price of Nortriptyline Hydrochloride, as described in Paragraphs 411-428 of the AG Teva Complaint, Paragraphs 585-588 of the IRP/Hospital Complaint, Paragraphs 1183-1194 of the DPP Complaint, and Paragraphs 282-289 of the EPP Complaint, which are incorporated here by reference.

233.    Cardinal, Heritage, Mylan, Sun/Mutual, Teva, Fougera, Actavis, and Perrigo conspired to raise the price of Nystatin Ointment, as described in Paragraphs 366-391 of the AG Topical Complaint, Paragraphs 360-366 of the IRP/Hospital Complaint, which are incorporated here by reference.

234.    Taro and Sandoz conspired to raise the price of Nystatin Triamcinolone Cream and Ointment, as described in Paragraphs 655-694 of the AG Topical Complaint and Paragraphs 1195-1201 of the DPP Complaint, which are incorporated here by reference.

235.    Teva and Par conspired to raise the price of Omega-3-Acid Ethyl Esters, as described in Paragraphs 363-373 of the AG Teva Complaint, Paragraphs 563-568 of the IRP/Hospital Complaint, Paragraphs 1202-1217 of the DPP Complaint, and Paragraphs 1349-1359 of the EPP Complaint, which are incorporated here by reference.

236.    Walgreens, Dr. Reddy's, and Valeant conspired to raise the price of Omeprazole-sodium bicarbonate, as described in Paragraphs 279-281 of the IRP/Hospital Complaint, which are incorporated here by reference.

237.    Sagent Pharmaceuticals, Sandoz, and Aurobindo conspired to raise the price of Oxacillin Sodium, as described in Paragraphs 1180-1189 of the AG Topical Complaint, which are incorporated here by reference.

238.    Teva, Sandoz, Dr. Reddy's, and Greenstone conspired to raise the price of Oxaprozin, as described in Paragraphs 299-307 and 506-517 of the AG Teva Complaint, Paragraphs 539-545 of the IRP/Hospital Complaint, Paragraphs 1218-1234 of the DPP Complaint, and Paragraphs 574-586 of the EPP Complaint, which are incorporated here by reference.

239.    Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of Oxybutynin, as described in Paragraphs 405-408 and 416 of the IRP/Hospital Complaint, Paragraphs 1235-1242 of the DPP Complaint, and Paragraphs 386-393 of the EPP Complaint, which are incorporated here by reference.

240.    Actavis, Alvogen, Amneal, Aurobindo, Mallinckrodt and Par conspired to raise the price of Oxycodone/Acetaminophen, as described in Paragraphs 1243-1252 of the DPP Complaint and Paragraphs 1041-1051 of the EPP Complaint, which are incorporated here by reference.

241.    Glenmark, Mallinckrodt, Par, Teva, and Lannett conspired to raise the price of Oxycodone HCl, as described in Paragraphs 700-705 of the IRP/Hospital Complaint and Paragraphs 1253-1266 of the DPP Complaint, which are incorporated here by reference.

242.    Teva, Upsher-Smith, and Par conspired to raise the price of Oxybutynin Chloride as described in Paragraphs 386-393 of the EPP Complaint, which are incorporated here by reference.

243.    Teva, McKesson, WBAD, Dr. Reddy's, and Zydus conspired to raise the price of Paricalcitol, as described in Paragraphs 448-460 and 518-535 of the AG Teva Complaint,

Paragraphs 325-343 of the IRP/Hospital Complaint, Paragraphs 1267-1282 of the DPP Complaint, and Paragraphs 1190-1200 of the EPP Complaint, which are incorporated here by reference.

244.    Teva, Sandoz, Aurobindo, and Greenstone/Pfizer conspired to raise the price of Penicillin V Potassium, as described in Paragraphs 1147-1151 of the EPP Complaint, which are incorporated here by reference.

245.    Actavis, Apotex, Bausch/Oceanside, Breckenridge, Greenstone, Heritage, Lupin, Mylan, Rising, Sandoz, Taro, Teva, and Versapharm conspired to raise the price of pentoxyifylline, as described in Paragraphs 428-430 and 439-442 of the IRP/Hospital Complaint and Paragraphs 175-187 of the EPP Complaint, which are incorporated here by reference.

246.    Actavis, Perrigo and Mylan conspired to raise the price of Permethrin, as described in Paragraphs 1283-1292 of the DPP Complaint and Paragraphs 207-220 of the EPP Complaint, which are incorporated here by reference.

247.    Par and Sandoz conspired to raise the price of Perphenazine, as described in Paragraphs 1293-1301 of the DPP Complaint and Paragraphs 163-174 of the EPP Complaint, which are incorporated here by reference.

248.    Taro, Mylan, Amneal and Sun conspired to raise the price of Pehnytoin, as described in Paragraphs 892-908 of the AG Topical Complaint, Paragraphs 1302-1317 of the DPP Complaint, and Paragraphs 1239-1252 of the EPP Complaint, which are incorporated here by reference.

249.    Lannett, Actavis and Impax conspired to raise the price of Pilocarpine HCL, as described in Paragraphs 1318-1326 of the DPP Complaint and Paragraphs 1152-1160 of the EPP Complaint, which are incorporated here by reference.

250.    Mylan, Teva, and Aurobindo conspired to raise the price of Pioglitazone HCL Metformin HCL Tablets, as described in Paragraphs 1205-1224 of the AG Topical Complaint and Paragraphs 218-222 of the IRP/Hospital Complaint, which are incorporated here by reference.

251.    Teva, Mylan, and Greenstone conspired to raise the price of Piroxicam, as described in Paragraphs 314-323 of the AG Teva Complaint, Paragraphs 551-553 of the IRP/Hospital Complaint, Paragraphs 1327-1339 of the DPP Complaint, and Paragraphs 198-206 of the EPP Complaint, which are incorporated here by reference.

252.    Upsher-Smith, Sandoz, Actavis, Zydus and Mylan conspired to raise the price of Potassium Chloride, as described in Paragraphs 621-633 of the IRP/Hospital Complaint, Paragraphs 1340-1349 of the DPP Complaint, and Paragraphs 235-248 of the EPP Complaint, which are incorporated here by reference.

253.    Teva, Glenmark, Apotex, Lupin, and Zydus conspired to raise the price of pravastatin, as described in Paragraphs 681-704 of the AG Teva Complaint and Paragraphs 405-408 of the IRP/Hospital Complaint, which are incorporated here by reference.

254.    Teva and Mylan conspired to raise the price of Prazosin HCL, as described in Paragraphs 1350-1366 of the DPP Complaint, Paragraphs 708-719 of the EPP Complaint, which are incorporated here by reference.

255.    Sandoz and Greenstone conspired to raise the price of Prednisolone Acetate, as described in Paragraphs 1367-1377 of the DPP Complaint and Paragraphs 1008-1016 of the EPP Complaint, which are incorporated here by reference.

256.    Actavis, Cadista, Par and West-Ward conspired to raise the price of Prednisone, as described in Paragraphs 1378-1387 of the DPP Complaint and Paragraphs 943-953 of the EPP Complaint, which are incorporated here by reference.

257. G&W and Perrigo conspired to raise the price of Prochlorperazine Maleate Suppositories, as described in Paragraphs 1441-1453 of the AG Topical Complaint, which are incorporated here by reference.

258. Teva, Mylan, Sandoz, and Cadista conspired to raise the price of Prochlorperazine, as described in Paragraphs 1320-1326 of the EPP Complaint, which are incorporated here by reference.

259. Walgreens, Actavis, and Akorn conspired to raise the price of Progesterone and Vancomycin, as described in Paragraphs 245-250 of the IRP/Hospital Complaint, which are incorporated here by reference.

260. Actavis, Perrigo and G&W conspired to raise the price of Promethazine HCL Suppositories, as described in Paragraphs 1506-1532 of the AG Topical Complaint, which are incorporated here by reference.

261. Actavis conspired to raise the price of Propranolol, as described in Paragraphs 894-901 of the AG Teva Complaint, which are incorporated here by reference.

262. McKesson, Teva, Actavis, Camber, and Lupin conspired to raise the price of Raloxifene, as described in Paragraphs 605-609 of the IRP/Hospital Complaint, Paragraphs 1388-1401 of the DPP Complaint, and Paragraphs 1424-1434 of the EPP Complaint, which are incorporated here by reference.

263. Actavis, Amneal, Glenmark, Greenstone, Lupin, Mylan, Dr. Reddy's, Sandoz, Taro, Teva, and Upsher-Smith conspired to raise the price of ranitidine, as described in Paragraphs 405-408 and 412 of the IRP/Hospital Complaint, Paragraphs 1402-1415 of the DPP Complaint, and Paragraphs 405-420 of the EPP Complaint, which are incorporated here by reference.

264.    Teva, Sandoz, Glenmark and Anmeal conspired to raise the price of Ranitidine HCL Capules, as described in Paragraphs 405-420 of the EPP Complaint, which are incorporated here by reference.

265.    Teva, Sandoz, Glenmark and Anmeal conspired to raise the price of Ranitidine HCL Tablets, as described in Paragraphs 405-420 of the EPP Complaint, which are incorporated here by reference.

266.    Ascend and Teva conspired to raise the price of Silver Sulfadiazine, as described in Paragraphs 1416-1423 of the DPP Complaint, which are incorporated here by reference.

267.    Mylan, Sun, and Greenstone conspired to raise the price of Spironolactone HCTZ, as described in Paragraphs 1424-1434 of the DPP Complaint and Paragraphs 737-746 of the EPP Complaint, which are incorporated here by reference.

268.    Walgreens, Dr. Reddy's, and Teva conspired to raise the price of Sumatriptan autoinjector, as described in Paragraphs 277- 278 of the IRP/Hospital Complaint, which are incorporated here by reference.

269.    Sandoz and Perrigo conspired to raise the price of Tacrolimus Ointment, as described in Paragraphs 1101-1110 of the AG Topical Complaint, which are incorporated here by reference.

270.    Teva, Mylan, and Actavis conspired to raise the price of Tamoxifen Citrate, as described in Paragraphs 769-782 of the AG Teva Complaint, Paragraphs 449-456 of the IRP/Hospital Complaint, Paragraphs 1435-1448 of the DPP Complaint, and Paragraphs 542-552 of the EPP Complaint, which are incorporated here by reference.

271.    Teva, Sandoz, and WBAD conspired to raise the price of Temozolomide, as described in Paragraphs 225-238 of the AG Teva Complaint, Paragraphs 251-258 of the

IRP/Hospital Complaint, Paragraphs 1449-1460 of the DPP Complaint, and Paragraphs 1017-1023 of the EPP Complaint, which are incorporated here by reference.

272.    Actavis, Breckenridge, Greenstone, Heritage, Lupin, Mylan, Rising, Sandoz, Taro, Teva, and Versapharm conspired to raise the price of Theophylline ER, as described in Paragraphs 428-430 and 443-44 of the IRP/Hospital Complaint, which are incorporated here by reference.

273.    Bausch Health and Sandoz conspired to raise the price of Timolol Maleate, as described in Paragraphs 672-679 of the IRP/Hospital Complaint, Paragraphs 1461-1473 of the DPP Complaint, Paragraphs 1124-1132 of the EPP Complaint, which are incorporated here by reference.

274.    Apotex, Sun, McKesson, Sandoz, Mylan, and Dr. Reddy's conspired to raise the price of Tizanidine, as described in Paragraphs 1051-1059 of the AG Teva Complaint, Paragraphs 304-313 of the IRP/Hospital Complaint, Paragraphs 1474-1489 of the DPP Complaint, and Paragraphs 852-864 of the EPP Complaint, which are incorporated here by reference.

275.    Teva, Sandoz, ABC, WBAD, Cardinal, and Akorn conspired to raise the price of tobramycin, as described in Paragraphs 239-247 of the AG Teva Complaint, Paragraphs 375-390 of the IRP/Hospital Complaint, Paragraphs 1490-1499 of the DPP Complaint, and Paragraphs 1074-1078 of the EPP Complaint, which are incorporated here by reference.

276.    Baucsh Health and Sandoz conspired to raise the price of Tobramycin Dexamethsone, as described in Paragraphs 706-711 of the IRP/Hospital Complaint and Paragraphs 1500-1507 of the DPP Complaint. which are incorporated here by reference.

277.    Teva and Mylan conspired to raise the price of Tolmetin Sodium, as described in Paragraphs 1508-1519 of the DPP Complaint and Paragraphs 954-960 of the EPP Complaint, which are incorporated here by reference.

278.   Teva, Mylan, Cardinal, and Greenstone, conspired to raise the price of Tolterodine Extended Release, as described in Paragraphs 193-204 of the AG Teva Complaint, Paragraphs 367-374 of the IRP/Hospital Complaint, Paragraphs 1520-1533 of the DPP Complaint, and Paragraphs 587-595 of the EPP Complaint, which are incorporated here by reference.

279.   Teva and Greenstone conspired to raise the price of Tolterodine Tartrate, as described in Paragraphs 308-313 of the AG Teva Complaint, Paragraphs 546-550 of the IRP/Hospital Complaint, Paragraphs 1520-1533 of the DPP Complaint, and Paragraphs 587-595 of the EPP Complaint, which are incorporated here by reference.

280.   Teva, Actavis and Zydus conspired to raise the price of Topiramate, as described in Paragraphs 1277-1283 of the EPP Complaint, which are incorporated here by reference.

281.   Actavis, Glenmark, Sandoz, Taro, Teva, and Zydus conspired to raise the price of Topiramate Sprinkle, as described in Paragraphs 482-484 of the IRP/Hospital and Paragraphs 1277-1283 of the EPP Complaint, which are incorporated here by reference.

282.   Apotex and Sun conspired to raise the price of Trazodone HCl, as described in Paragraphs 1534-1540 of the DPP Complaint, which are incorporated here by reference.

283.   Fougera, Sandoz, Taro, Ascend, Par, and Perrigo conspired to raise the price of Triamcinolone Acetonide cream and ointment, Paragraphs 258-264 of the AG Topical Complaint Paragraphs 1541-1551 of the DPP Complaint,  and Paragraphs 221-234 of the EPP Complaint, which are incorporated here by reference.

284.   Rising and Taro conspired to raise the price of Triamcinolone Acetonide Paste, Paragraphs 796-800 of the AG Topical Complaint , which are incorporated here by reference.

285.     Actavis, Apotex, Mylan, Sandoz, and Lannett conspired to raise the price of Triamterene HCTZ as described in Paragraphs 1552-1562 of the DPP Complaint, Paragraphs 394-404 of the EPP Complaint, which are incorporated here by reference.

286.     Mylan and Sandoz conspired to raise the price of Trifluoperazine HCL, as described in Paragraphs 993-1002 of the AG Teva Complaint, Paragraphs 615-620 of the IRP/Hospital Complaint, Paragraphs 1563-1578 of the DPP Complaint, and Paragraphs 1024-1035 of the EPP Complaint, which are incorporated here by reference.

287.     H.D. Smith, Camber, and Dr. Reddy's conspired to raise the price of Valganciclovir, as described in Paragraphs 185-195 of the IRP/Hospital Complaint, which are incorporated here by reference.

288.     Sandoz and Mylan conspired to raise the price of Valsartan-HCTZ, as described in Paragraphs 516-518 of the IRP/Hospital Complaint, Paragraphs 1579-1591 of the DPP Complaint, and Paragraphs 681-688 of the EPP Complaint, which are incorporated here by reference.

289.     Actavis, Amneal, Glenmark, Sandoz, Taro, Teva, and Zydus conspired to raise the price of Warfarin, as described in Paragraphs 471-481 of the IRP/Hospital Complaint, Paragraphs 398-431 of the DPP Complaint, and Paragraphs 1360-1374 of the EPP Complaint, which are incorporated here by reference.

290.     Direct evidence demonstrates that McKesson has entered into a vertical conspiracy with the overarching horizontal conspiracy described above to distribute the relevant products at supracompetitive prices, thereby inflicting antitrust injury in fact on members of the proposed Classes and Subclasses.

## CLASS ACTION ALLEGATIONS

### Class of Direct Purchasers From Conspirator McKesson

291.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this

action on behalf of a Class defined as:

> All persons or entities that have directly purchased generic drugs from conspirator McKesson in the United States from September 25, 2014 through the present ("Class Period") ("Class of Direct Purchasers from Conspirator McKesson").

## Rule 23(a) Prerequisites

292.    Prosecution of the claims of the Class as a class action is appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are met:

(a)    Members of the Class are so numerous that joinder is impracticable. Plaintiffs believe that there are hundreds of Class members such that joinder of all Class members is impracticable. Joinder also is impracticable because of the geographic diversity of the members of the Class, the need to expedite judicial relief, and the Class Representatives' lack of knowledge of the identity and addresses of all members of the Class (although Plaintiffs believe that information is discoverable from information and records maintained by defendants).

(b)    There are numerous questions of law and fact arising from the pattern of conspirators' conduct which are common to the members of the Class.  These include, but are not limited to, common issues as to (1) whether defendants have conspired to eliminate competition and thereby increase the prices of generic drugs in the United States; (2) the duration and extent of the conspiracy alleged; (3) whether defendants have been participants in the conspiracy; (4) the effect of the conspiracy on the prices of generic drugs during the damage period; (5) whether defendants' conduct has caused above-competitive prices for generic drugs; (6) whether, and to what extent, the conduct of defendants has caused antitrust price injury to Plaintiffs and other members of the Class; and (7) whether defendants' conduct was a *per se* violation of s Section 1 of the Sherman Act, 15 U.S.C. § 1.

(c)    The claims of the Class Representatives are typical of the claims of the members of the Class and fairly encompass the claims of the members of the Class.  The Class Representatives and the members of the Class are similarly or identically harmed by the same systematic and anticompetitive conduct by Defendants.

(d)     The Class Representatives and their counsel will fairly and adequately protect the interests of the members of the Class.  There are no material conflicts between the claims of the Class Representatives and the members of the Class that would make class certification inappropriate. Counsel for the Class are experienced and competent in the prosecution of class action antitrust litigation, and will vigorously assert the claims of the Class Representatives and the other members of the Class.

## Rule 23(b)(3) Prerequisites

293.   Prosecution of the claims of the Class as a class action is appropriate under Rule 23(b)(3) because:

(a)     Questions of law or fact common to the members of the Class predominate over any questions affecting only its individual members;

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy; and

## Rule 23(b)(2) Prerequisites

294.   Prosecution of the claims of the Class is appropriate under Rule 23(b)2) because the conspirators have acted, or refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief, or corresponding declaratory relief, for the Class as a whole.

## ANTITRUST INJURY

295.   During the Class Period, Defendants have sold substantial quantities of generic drugs in a continuous and uninterrupted flow of interstate commerce to purchasers throughout the United States.

50

296.    During the Class Period, Class members have directly purchased generic drugs from the conspiracy from co-conspirator McKesson. Competition has been harmed because they have been forced to pay above-competitive pricing materially caused by an overarching conspiracy across the generic drug industry. As a consequence they have suffered antitrust price injury and substantial damages.

297.    Each  Defendant has joint and several liability without right of contribution for the damages inflicted on the Class by the overarching conspiracy.

## STANDING

298.    Members of the proposed Class have purchased directly from the conspiracy through Defendant McKesson as co-conspirator. As a consequence they have constitutional standing and statutory standing under Section 4(a) of the Clayton Act, 15 U.S.C. § 15(a) to pursue damages inflicted by the conspiracy.

## COUNT I

### Restraint of Trade
### (Section 1 of the Sherman Act)

299.    All foregoing paragraphs are incorporated herein by reference.

300.    Defendant conspirators have engaged in unlawful price fixing and market allocation constituting *per se* violations under Section 1 of the Sherman Act, 15 U.S.C. § 1.

301.    This conspiracy restrains trade in interstate commerce across the generic drug industry.

302.    Members of the proposed Class purchasing directly from the conspiracy through the Distributor Defendants have paid above-competitive prices for generic drugs and have suffered actual antitrust damages. Plaintiffs are entitled to damage and injunctive relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26

## SUPPLEMENTAL JURISDICTION

303.    Plaintiffs are entitled to damage and injunctive relief under Sections 4 and 16 of the

Clayton Act, 15 U.S.C. §§ 15, 26.

304.    All the foregoing paragraphs are incorporated herein by reference.

305.    By virtue of its injuries and entitlement to damages under the Clayton Act, Plaintiffs

have standing to assert that Defendant conspirators have engaged in unlawful price fixing and

market allocation constituting *per se* violations under the state laws alleged below ("Indirect-

Purchaser Jurisdictions") on behalf of an Indirect-Purchaser Healthcare Class, as defined below.

### Indirect-Purchaser Healthcare Class

306.    These claims are prosecuted in the alternative by an Indirect-Purchaser Healthcare

Class under Fed. R. Civ. P. 23(a) and 23(b)(3) encompassing:

> All United States healthcare providers purchasing the generic drugs of Defendant
> manufacturers through distributors and wholesalers from September 25, 2014 through the
> present ("Class Period"). "Healthcare providers" include without limitation hospitals,
> medical or diagnostic clinics, outpatient centers, long-term care facilities, and surgery
> centers. They do not include pharmacies operated by private or public corporations,
> insurance companies, or pension plans purchasing generic drugs.

> The class is organized into sub-classes according to the Indirect-Purchaser Jurisdiction
> specified below.

### Rule 23(a) Prerequisites

307.    Prosecution of the claims of the Class and its Sub-Classes as a class action is

appropriate because the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure are

met:

(a)    The number of persons in the Class and is in the thousands, and the members of the

Class are therefore so numerous that joinder of all members of the Class is impracticable. Joinder

also is impracticable because of the geographic diversity of the members of the Class, the need to

expedite judicial relief, and the Class Representative's lack of knowledge of the identity and addresses of all members of the Class.

(b)     There are numerous questions of law and fact arising from the pattern of conspirators' restraint of trade which are common to the members of the Class. These include, but are not limited to, common issues as to (1) whether the Defendants have engaged in restraint of trade in the Indirect Purchaser Jurisdictions; and (2) whether this conduct, taken as a whole, has materially caused antitrust price injury to be inflicted indirectly on members of the Class.

308.    The claims of the Class Representatives are typical of the claims of the members of the Class and fairly encompass the claims of the members of the Class. The Class Representatives and the members of the Class are similarly or identically harmed by the same systematic and pervasive concerted action.

309.    The Class Representatives and the Representatives' counsel will fairly and adequately protect the interests of the members of the Class. There are no material conflicts between the claims of each Class Representative and the members of the Class that would make class certification inappropriate. Counsel for the Class will vigorously assert the claims of the Class Representatives and the other members of the Class.

**Rule 23(b)(3) Prerequisites**

310.    In addition, the prosecution of the claims of the Class as a class action pursuant to Rule 23(b)(3) is appropriate because:

(a)     Questions of law or fact common to the members of the Class predominate over any questions affecting only its individual members; and

(b)     A class action is superior to other methods for the fair and efficient resolution of the controversy.

## COUNT II

### Alabama

311.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Alabama Code. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals to Alabama healthcare providers was restrained throughout Alabama; (2) prices were fixed at above-competitive levels throughout Alabama; (3) members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Alabama commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade in violation. Accordingly, Plaintiffs and members of the Indirect-Purchaser Class seek all forms of relief available under Alabama Code § 6-5-60, et seq.

## COUNT III

### Arizona

312.     Defendants have entered into an unlawful agreement in restraint of trade in violation of Arizona Revised Statutes.. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals in Arizona to healthcare providers restrained throughout Arizona; (2) prices were fixed at above-competitive levels throughout Arizona; (3) members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition;

and (4) Members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals due to the pass on by the resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have restrained trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Arizona Revised Statutes, § 44-1401, *et seq.*

## COUNT IV

### California

313.    Defendants have entered into an unlawful agreement in restraint of trade in violation of California Business and Professions Code § 16700 *et seq.* During the Class Period, Defendants and their unnamed co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of California Business and Professions Code §16720. Defendants have acted in violation of § 16720 to fix the prices in the sale of generic pharmaceuticals at above-competitive levels. This violation of § 16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their unnamed co-conspirators, the substantial terms of which were to fix prices. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals is restrained throughout California; (2) prices were fixed at above-competitive levels throughout California; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals

due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected California commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. During the Class Period, Defendants' illegal conduct substantially affected California commerce. As a result of Defendants' violation of § 16720, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorney's fee, pursuant to California Business and Professions Code § 16750(a).

## COUNT V

### District of Columbia

314.   Defendants have entered into an unlawful agreement in restraint of trade  in violation of District of Columbia Code. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to District of Columbia healthcare providers was restrained throughout District of Columbia; (2) prices were fixed at above-competitive levels throughout District of Columbia; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered

into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under District of Columbia Code Annotated § 28-4501, *et seq*.

## COUNT VI

### Hawaii

315.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Hawaii Code Revised Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Hawaii healthcare providers was restrained throughout Hawaii; (2) prices were fixed at above-competitive levels throughout Hawaii; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Hawaii Revised Statutes Annotated § 480-1, *et seq*.

## COUNT VII

### Illinois

316.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Illinois Code Antitrust Act. Defendants' conspiracy has had the following effects: (1)

competition in the sale of generic pharmaceuticals to Illinois healthcare providers was restrained throughout Illinois; (2) prices were fixed at above-competitive levels throughout Illinois; (3) Plaintiffs were deprived of free and open competition; and (4) Plaintiffs indirectly paid above-competitive prices due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs seek all forms of relief available under the Illinois Antitrust Act (740 Illinois Compiled Statutes 10/1, *et seq*.). Plaintiffs bring this Count on behalf of themselves and not a class.

## COUNT VIII

### Iowa

317.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Iowa healthcare providers was restrained throughout Iowa; (2) prices were fixed at above-competitive levels throughout Iowa; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing,

Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Iowa Code § 553.1, *et seq.*

## COUNT IX

### Kansas

318.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Kansas Statutes Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Kansas healthcare providers was restrained throughout Kansas; (2) prices were fixed at above-competitive levels throughout Kansas; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Kansas healthcare providers due to the pass on by the practices of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Kansas Statutes Annotated, § 50-101, *et seq.*

## COUNT X

## Maine

319.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Maine Revised Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Maine healthcare providers was restrained throughout Maine; (2) prices were fixed at above-competitive levels throughout Maine; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Maine healthcare providers due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Maine Revised Statutes (Maine Rev. Stat. Ann. 10, § 1101, *et seq.*)

## COUNT XI

## Michigan

320.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Michigan Compiled Laws Annotated. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals to Michigan healthcare providers was restrained throughout Michigan; (2) prices were fixed at above-competitive levels throughout

Michigan; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Michigan to healthcare providers due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Michigan Compiled Laws Annotated § 445.771, *et seq.*

## COUNT XII

### Minnesota

321.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of Minnesota Annotated Statutes. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals to Minnesota healthcare providers throughout Minnesota; (2) prices were fixed at above-competitive levels throughout Minnesota; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices due to the pass on by resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class

have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchase Healthcare Class seek all forms of relief available under Minnesota Annotated Statutes § 325D.49, *et seq.*

## COUNT XIII

### Mississippi

322.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Mississippi Code Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Mississippi healthcare providers was restrained throughout Mississippi; (2) prices were fixed at above-competitive levels throughout Mississippi; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Mississippi resellers due to the pass on by them of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Mississippi Code Annotated § 75-21-1, *et seq.*

## COUNT XIV

### Nebraska

323.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of Nebraska Revised Statutes. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals Alabama healthcare providers was restrained throughout Nebraska; (2) prices were fixed at above-competitive levels throughout Nebraska; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Nebraska resellers due to the pass on by the practices of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Nebraska Revised Statutes § 59-801, *et seq.*

## COUNT XV

### Nevada

324.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of Nevada Revised Statutes Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Nevada healthcare providers was restrained throughout Nevada; (2) prices were fixed at above-competitive levels throughout Nevada; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of

free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Nevada resellers due to the pass on by the resellers of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchase Healthcare Class seek all forms of relief available under Nevada Revised Statutes Annotated § 598A.010, *et seq.*

## COUNT XVI

## New Hampshire

325.   Defendants have entered into an unlawful agreement in restraint of trade  in violation of New Hampshire Revised Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to New Hampshire healthcare providers was restrained throughout New Hampshire; (2) prices were fixed at above-competitive levels throughout New Hampshire; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by New Hampshire resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class

have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under New Hampshire Revised Statutes § 356:1, *et seq*.

## COUNT XVII

### New Mexico

326.    Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to New Mexico healthcare providers was restrained throughout New Mexico; (2) prices were fixed at above-competitive levels throughout New Mexico; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by New Mexico resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under New Mexico Statutes Annotated § 57-1-1, *et seq*.

## COUNT XVIII

### New York

327.     Defendants have entered into an unlawful agreement in restraint of trade in violation of New York's Donnelly Act. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to New York healthcare providers was restrained throughout New York; (2) prices were fixed at above-competitive levels throughout New York; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Damage Class indirectly paid above-competitive prices for generic pharmaceuticals provided by New York resellers due to their pass on by the practices of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under New York's Donnelly Act, New York General Business Law § 340, *et seq*.

## COUNT XIX

### North Carolina

328.     Defendants have entered into an unlawful agreement in restraint of trade in violation of North Carolina General Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to North Carolina healthcare providers was restrained throughout North Carolina; (2) prices were fixed at above-competitive

levels throughout North Carolina; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Damage Class indirectly paid above-competitive prices for generic pharmaceuticals provided by North Carolina resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under North Carolina General Statutes § 75-1, *et seq.*

## COUNT XX

### North Dakota

329.   Defendants have entered into an unlawful agreement in restraint of trade in violation of North Dakota Century Code. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to North Dakota healthcare providers was restrained throughout North Dakota; (2) prices were fixed at above-competitive levels throughout North Dakota; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by North Dakota resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected North Dakota commerce. As a direct and proximate result of Defendants' unlawful

conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under North Dakota Century Code § 51-08.1-01, *et seq*.

**COUNT XXI**

**Oregon**

330.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Oregon Revised Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Oregon healthcare providers was restrained throughout Oregon; (2) prices were fixed at above-competitive levels throughout Oregon; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Oregon resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Oregon commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Oregon Revised Statutes § 646.705, *et seq*.

## COUNT XXII

### Rhode Island

331.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Rhode Island Antitrust Act. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Rhode Island healthcare providers was restrained throughout Rhode Island; (2) prices were fixed at above-competitive levels throughout Rhode Island; (3) Plaintiffs and members of the Indirect-Purchaser Damage Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Rhode Island resellers due to their pass on by the practices of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Rhode Island commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under the Rhode Island Antitrust Act, Rhode Island General Laws § 6-36-1, *et seq*. This Count applies to overcharges incurred on or after July 15, 2013.

## COUNT XXIII

### South Dakota

332.    Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Law. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to South Dakota healthcare providers was

restrained throughout South Dakota; (2) prices were fixed at above-competitive levels throughout South Dakota; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by South Dakota resellers due to their pass on by the practices of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected South Dakota commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under South Dakota Codified Laws § 37-1-3.1, *et seq.*

## COUNT XXIV

### Tennessee

333.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of Tennessee Code Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Tennessee healthcare providers was restrained throughout Tennessee; (2) prices were fixed at above-competitive levels throughout Tennessee; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Tennessee resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Tennessee

70

commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Tennessee Code Annotated § 47-25-101, *et seq.*

## COUNT XXV

## Utah

334.   Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Utah healthcare providers was restrained throughout Alabama; (2) prices were fixed at above-competitive levels throughout Utah; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Utah resellers due to their pass on by their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Utah commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Utah Code Annotated § 76-10-3101, *et seq.*

## COUNT XXVI

## Vermont

335.     Defendants have entered into an unlawful agreement in restraint of trade  in violation of Vermont Statutes Annotated. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Vermont healthcare providers was restrained throughout Vermont; (2) prices were fixed at above-competitive levels throughout Vermont; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Vermont resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Vermont commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Vermont Stat. Ann. 9 § 2453, *et seq.*

## COUNT XXVII

## West Virginia

336.     Defendants have entered into an unlawful agreement in restraint of trade  in violation of West Virginia Code. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to West Virginia healthcare providers was restrained throughout West Virginia; (2) prices were fixed at above-competitive levels throughout

West Virginia; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by West Virginia resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected West Virginia commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under West Virginia Code § 47-18-1, *et seq*.

## COUNT XXVIII

### Wisconsin

337.    Defendants have entered into an unlawful agreement in restraint of trade in violation of Wisconsin Statutes. Defendants' conspiracy has had the following effects: (1) competition for the sale of generic pharmaceuticals to Wisconsin healthcare providers was restrained throughout Wisconsin; (2) prices were fixed at above-competitive levels throughout Wisconsin; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Wisconsin resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Wisconsin commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and

property and are threatened with further injury. By reason of the foregoing, Defendants entered into an agreement in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Wisconsin Statutes § 133.01, *et seq*.

**COUNT XXIX**

**Connecticut**

338.    Defendants have entered into an unlawful agreement in restraint of trade  in violation of the Connecticut General Statutes. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Connecticut healthcare providers was restrained throughout Connecticut; (2) prices were fixed at above-competitive levels throughout Connecticut; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Connecticut resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Connecticut commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Connecticut General Statutes § 35-24, *et seq*.

## COUNT XXX

## Maryland

339.    Defendants have entered into an unlawful agreement in restraint of trade in violation of the Maryland Code. Defendants' conspiracy has had the following effects: (1) competition in the sale of generic pharmaceuticals to Maryland healthcare providers was restrained throughout Maryland; (2) prices were fixed at above-competitive levels throughout Maryland; (3) Plaintiffs and members of the Indirect-Purchaser Healthcare Class were deprived of free and open competition; and (4) Plaintiffs and members of the Indirect-Purchaser Healthcare Class indirectly paid above-competitive prices for generic pharmaceuticals provided by Maryland resellers due to their pass on of their antitrust price injury materially caused by Defendants' conspiracy. During the Class Period, Defendants' illegal conduct substantially affected Maryland commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Indirect-Purchaser Healthcare Class have been injured in their business and property and are threatened with further injury. Defendants have engaged in restraint of trade. Accordingly, Plaintiffs and members of the Indirect-Purchaser Healthcare Class seek all forms of relief available under Maryland Code Annotated, Com. Law § 11-201, *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs individually and as members of the proposed Class alleged pray that:

A.      This Court declare that Defendants' conduct constitutes a *per se* violation of the Sherman Act, 15 U.S.C. § 1, and award treble damages and injunctive relief to the proposed Class under Sections 4 and 16 of the of the Clayton Act., 15 U.S.C. § § 15, 26;

B.      In the alternative, this Court declare that Defendants' conduct constitutes a *per se*

restraint of trade in violation of each of the relevant statutes of the Indirect-Purchaser Jurisdictions, and award damages and injunctive to the proposed Class as permitted by state law;

C.      Plaintiffs recover reasonable attorneys' fees and costs as allowed by law;

D.      Plaintiffs recover pre-judgment and post-judgment interest at the highest rate allowed by law; and

E.      Plaintiffs be granted such other and further relief as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  August 28, 2020                              Respectfully submitted,


**WHATLEY KALLAS, LLP**
Henry C. Quillen
159 Middle St., Suite 2C
Portsmouth, NH 03801
Telephone: (603) 294-1591
Facsimile: (800) 922-4851
hquillen@whatleykallas.com

**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr.
Edith M. Kallas
152 West 57th Street, 41st Floor
New York, NY  10019
Telephone: (212) 447-7060
Facsimile: (800) 922-4851
jwhatley@whatleykallas.com
ekallas@whatleykallas.com

**BERRY LAW PLLC**
R. Stephen Berry
P.A. Bar No. 22418
1100 Connecticut Avenue, N.W.
Suite 645
Washington, D.C. 20006
Telephone: (202) 296-3020
Facsimile: (202) 296-3038
sberry@berrylawpllc.com

**Attorneys for Plaintiffs**